No. 05-576 T
(Judge Allegra)

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff

v.

THE UNITED STATES,

Defendant

BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO SUSPENDED PROCEEDINGS

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

**Page**

## TABLE OF CONTENTS

Brief in Support of Defendant's Motion to Suspend Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 1
Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Declaration of David House . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

| Exhibits | Description |
|---|---|
| 1 | KPMG Prosecution Agreement |
| 2 | KPMG Information |
| 3 | KPMG Statement of Facts |
| 4 | Superseding Indictment, United States v. Stein, et al., 05 Crim 888 (LAK) (SDNY) |
| 5 | Superseding Indictment Press Release |


## TABLE OF AUTHORITIES

**Cases**:

*Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 6, 7

*Ampetrol v. United States*, 30 Fed. Cl. 320 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Belford Strategic Investment Fund and Presidio Growth LLC v. United States*,
Dkt No. C-04-4309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*C3, Inc. v. United States*, 4 Cl. Ct. 790 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*C3, Inc. v. United States*, 5 Cl. Ct. 659 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*,
371 U.S. 955 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6



1442324.1

**Page**

## TABLE OF AUTHORITIES

**Cases (Continuation):**

*Instashred Security Services, LLC v. United States, Fed. Cl. No. 05-299 T (Oct. 24, 2005)* . . . . . . . . . . 6

*Landis v. North American Co.*, 299 U.S. 248 (1936) . . . . . . . . . . 7, 8

*Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978) . . . . . . . . . . 7

*MIPW I Acquisitions, LLC v. United States*, Fed. Cl. No. 05-304 T (Sept. 12, 2005) . . . . . . . . . . 6

*Penden v. United States*, 512 F.2d 1099 (Ct. Cl. 1975) . . . . . . . . . . 7

*Presidio Advisors, LLC, Norvest Ltd. v. United States*, Fed. Cl. No. 05-411 . . . . . . . . . . 2

*Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir.), *cert. denied* 449 U.S. 993 (1981) . . . . . . . . . . 6

*St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513 (1991) . . . . . . . . . . 7-9

*United States v. Stein, et al., 05 Crim. 888 (LAK)* . . . . . . . . . . 4, 5

**Miscellaneous:**

Fed.R.Crim.P. 6(e) . . . . . . . . . . 10

*"The Role of Professional Firms in the U.S. Tax Shelter Industry," Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, at 11, Senate Report 109-54, 109th Cong., 1st Session (2005)* . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-576 T
(Judge Allegra)

---

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS

---

Where discovery in a civil lawsuit threatens to interfere with a related criminal prosecution and ongoing investigation, courts routinely stay the civil case, so the criminal matter may proceed unimpeded. The United States Attorney for the Southern District of New York is prosecuting an illegal tax shelter criminal conspiracy case against John Larson, Robert Pfaff, and others involving entities and transactions that are intimately related to the matters involved in this case. To make their initial disclosures, to take discovery, and to prepare this case for trial, both sides will necessarily have to address matters that directly implicate – and will likely interfere with – the ongoing criminal investigation and prosecution of the criminal case. According, the Court should stay all proceedings in this case until the criminal case is resolved.

In another case in which John Larson and Robert Pfaff are the principals of the plaintiffs, the United States has filed a motion to stay on the same grounds presented below. Presidio

Advisors, LLC, Norvest Ltd. v. United States, Fed. Cl. No. 05-411 T. That motion was granted by this Court on November 17, 2005. Similarly, in the case Belford Strategic Investment Fund and Presidio Growth LLC v. United States, Dkt No. C-04-4309 VRW, (N.D. Cal.), the District Court entered an order on November 7, 2005, staying that case pending the criminal proceeding in the Southern District of New York due to the involvement of John Larson and Robert Pfaff as principals of Presidio Growth LLC.

## BACKGROUND

Plaintiff filed this action on May 26, 2005, seeking a redetermination of adjustments that the Internal Revenue Service proposed to the partnership income tax return (Form 1065) that Prestop Holdings, LLC (Prestop), filed for its taxable year ended December 31, 1997.[1] Prestop asks the Court to overturn the IRS's determinations in the Notice of Final Partnership Administrative Adjustment (FPAA).[2] In the FPAA, the IRS determined that Prestop had utilized a tax shelter involving option positions in U.S. Treasury Notes to inflate the partners' basis in their partnership interest by the amount of $6,149,178. The IRS determined that the transactions giving rise to the claimed increase in basis lacked economic substance, had no bona fide business purpose, and were shams. The option transactions culminated in a "paper" loss, generated through the purported disposition of the partners' partnership interests with an artificially pumped-up basis, and used by John Larson and Robert Pfaff, the principals of Prestop, to avoid paying income taxes on substantial amounts of income, presumably including income they received through the promotion and implementation of illegal tax shelters in 1998 and 1999.

---

[1]Prestop reported that it had two partners in 1997: RP Investment Trust Robert Pfaff, 1725 19th Street, 300 Denver, CO 80202; and JL Investment Trust John Larson, 4104 24th Street, #570, San Francisco, California. *Compl. Ex. A.*

[2] *Compl. Ex. A.*

The individuals, entities, and transactions involved in this case are intimately related to a broad-based conspiracy to develop, promote, sell, and implement various illegal tax shelters by the worldwide accounting firm KPMG LLP and others.[3] On August 29, 2005, KPMG admitted and accepted responsibility for violations of law with respect to its involvement in developing, promoting, selling, and implementing illegal tax shelters during the period from 1996 through 2002 and has agreed to pay $456,000,000 to the United States as a punitive fine, restitution, and penalties to the IRS stemming from its involvement with the illegal tax shelters.[4] Among the fraudulent tax shelter transactions designed, marketed, sold, and implemented by KPMG were FLIP (Foreign Leveraged Investment Program), OPIS (Offshore Portfolio Investment Strategy), BLIPS (Bond Linked Issue Premium Structure), SOS (Short Option Strategy) shelters.[5]

Larson and Pfaff, and their entities, were involved closely in the development, promotion, sale, and implementation of the fraudulent KPMG tax shelters.[6] In 1997, one of the Larson/Pfaff entities, Presidio Advisory Services, and KPMG first entered into a formal operating agreement with respect to the marketing, sale, and implementation of the FLIP tax shelter.[7] The agreement was modified in 1998 to expand Presidio's involvement to the OPIS and BLIPS tax shelters.[8] During the illegal tax shelter conspiracy, the Larson/Pfaff entities received

---

[3] *See "The Role of Professional Firms in the U.S. Tax Shelter Industry," Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, at 11, Senate Report 109-54, 109th Cong., 1st Session (2005)("Subcommittee Report").*

[4] *See KPMG Prosecution Agreement (House Decl., Ex. 1); KPMG Information (House Decl., Ex. 2); KPMG Statement of Facts (House Decl. Ex. 3.).*

[5] *KPMG Information, ¶ 11 (House Decl., Ex. 2).*

[6] *Subcommittee Report, at 122-125.*

[7] *Id. at 122.*

[8] *Id. at 123.*

at least $140 million in fees (approximately 95% of their revenue) from their illegal tax-shelter related work with KPMG.[9]

On October 17, 2005, the United States Attorney for the Southern District of New York filed a superseding indictment charging nineteen individuals with conspiracy to defraud the IRS, tax evasion, and obstruction of the Internal Revenue laws arising out of the illegal tax shelters that KPMG and others designed, marketed, and implemented, and which, it is charged, generated over $11 billion in fraudulent phony tax losses by wealthy individuals.[10] The superseding indictment specifically identifies John Larson and Robert Pfaff as participants in the KPMG illegal tax shelter conspiracy and describes how the Larson/Pfaff entities were instrumental in the conspiracy. John Larson (who is a lawyer, CPA, and former KPMG Senior Tax Manager), left KPMG to form a series of entities, including Presidio Advisors, Prevad, and Norwood Holdings, Inc., with Robert Pfaff (who is a lawyer, CPA, and former KPMG tax partner), and those entities participated in the illegal tax shelter conspiracy.[11] Thus, the superseding indictment charges that Larson, Pfaff, and their entities were directly involved in the development, marketing, and implementation of the KPMG illegal tax shelters.[12]

Specifically, the superseding indictment recites that the KPMG FLIP shelter was marketed and sold from 1996 through 1999 and generated at least $1.9 billion in phony tax

---

[9] *Id. at 122; Superseding Indictment, United States v. Stein, et al., 05 Crim. 888 (LAK) (SDNY) ¶ 68 (House Decl. Ex. 4.).*

[10] *Superseding Indictment, ¶ 29-32; Superseding Indictment Press Release (House Decl. Ex. 5.).*

[11] *Superseding Indictment, ¶ 13; Subcommittee Report, at 122.*

[12] *Superseding Indictment, at ¶ 78.*

losses.[13] The Larson/Pfaff entities reaped at least $3 million in gross fees from the FLIP shelter during those years. In addition, the KPMG OPIS shelter was marketed and sold from 1998 through 1999, and generated at least $2.3 billion in phony tax losses and $12 million in gross fees for the Larson/Pfaff entities .[14] Moreover, the KPMG BLIPS shelter was marketed and sold from 1999 through 2000, and generated at least $5.1 billion in phony tax losses and $134 million in gross fees for the Larson/Pfaff entities.[15]

Most significantly, the superseding indictment describes how Larson, Pfaff, and other conspirators used several types of tax shelters to evade their own personal taxes on income generated from their participation in the tax shelter conspiracy.[16] For example, the indictment charges that Larson and Pfaff twice utilized the fraudulent BLIPS shelter to generate $24 million in losses in 1999 and $75 million in losses in 2000 to evade their own taxes and taxes related to entities they owned and controlled on the income generated from the tax shelter conspiracy.[17] The transactions involved in this case were part of the effort by Larson, Pfaff, and their entities to evade taxes on the income generated from the tax shelter conspiracy.

The judge hearing the criminal case has set a trial date for September 11, 2006.[18]

---

[13] *Id. at ¶ 29.*

[14] *Id. at ¶ 30.*

[15] *Id. at ¶ 31.* The Larson/Pfaff entities received fees equal to approximately 2.75% of the desired tax loss in each shelter deal. *Id. at ¶ 39.*

[16] *Id. at ¶ 33.*

[17] *Id. at ¶ 68.*

[18] Other cases in the Court of Federal Claims which involve facts related to the New York criminal case (though not facts related to this case) have been suspended already. *Instashred Security Services, LLC v. United States, Fed. Cl. No. 05-299 T (Oct. 24, 2005, Chief Judge Damich); MIPW I Acquisitions, LLC v. United States, Fed. Cl. No. 05-304 T (Sept. 12, 2005, Judge Futey).*

**ARGUMENT**

The leading case in the Court of Appeals for the Federal Circuit on the issue of whether proceedings in a civil case should be suspended pending the resolution of a related criminal case is *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987).[19] As the Federal Circuit stated, "[t]he Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. A court, however, has the discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem [ ] to require such action, sometimes at the request of the prosecution, . . . sometimes at the request of the defense[.]'" *Id.* at 1202 (citations omitted). The Federal Circuit in *Afro-Lecon* went on to endorse the view taken by the D.C. Circuit in *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir.), *cert. denied* 449 U.S. 993 (1981), that the court must "make a case-by-case determination of whether to grant a stay of civil proceedings." *Afro-Lecon* at 1202 (citations omitted); *C3, Inc. v. United States*, 4 Cl. Ct. 790,791 (1984).

When related criminal and civil cases proceed simultaneously, there can be dangerous implications for both parties. For a criminal defendant, allowing the civil case to proceed may put his or her Fifth Amendment privilege against self-incrimination at risk, may expand the discovery in the criminal case beyond the limits of the Federal Rules of Criminal Procedure (FRCP), and may expose the basis of the defense to the prosecution in advance of the criminal trial. *Afro-Lecon* at 1203, quoting *Dresser* at 1375-1376. The danger to the prosecution is that the civil proceedings may act as "a dress rehearsal for a criminal trial, in which all the Government witnesses testify and are cross-examined at length, but the defendant to be does not,

[19] The seminal case on this issue is *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955 (1963), in which the court noted the significant number of factors which favor staying a civil case to allow a related criminal prosecution to run its course.

[and it] is potentially a big lift to the criminal defense and could well be decisive in securing an acquittal, if anything could." *Afro-Lecon* at 1203, quoting *Penden v. United States*, 512 F.2d 1099, 1104 (Ct. Cl. 1975). The criminal defendants may use the more liberal discovery available in the civil case to gain knowledge regarding the Government's criminal case to which they would not otherwise have access. *See,* e.g. *Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978) (criminal defendant alleged to be using civil discovery to obtain evidence that would not be available in the criminal proceedings).

The court in *Penden* stated that "[I]t has long been the practice to "freeze" civil proceedings when a criminal prosecution involving the same facts is warming up or under way . . . . The "freeze" we think is not for the protection of the [criminal defendant] only, but also rises out of a sense that deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material." *Penden* at 1103. In making the decision to stay a civil case, courts must weigh the competing interests of the parties and must maintain an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (citations omitted); *Ampetrol v. United States*, 30 Fed. Cl. 320, 321 (1994) (quoting *Landis*).

In *St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513, 515 (1991), the court enumerated three tests that a movant seeking a stay of a civil trial on the basis of a concurrent criminal trial must satisfy:

> (1) the movant must make a clear showing, by direct or indirect proof, that the issues in the civil action are "related" as well as "substantially similar" to the issues in the criminal investigation;
> (2) the movant must make a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending; and
> (3) the movant must establish that the duration of the requested stay is not immoderate or unreasonable.

This three-part test was used most recently by the court in *Ampetrol*, which granted a stay despite the fact that Ampetrol was not a defendant in the criminal proceedings. *Ampetrol* at 321.

The court in *C3, Inc. v. United States*, 5 Cl. Ct. 659, 661 (1984), stated that "the resolution of Issue #1 requires no extensive comparative factual analysis by this court in order to conclude that the issues in the civil action are 'related' as well as 'substantially similar' to those in the criminal investigation." In fact, "defendant may satisfy its burden to make a *prima facie* showing of the ultimate fact, circumstantially." *St. Paul Fire* at 516.

Entitlement to a stay also requires the movant to "make out a clear case of hardship or inequity in being required to go forward . . ." *Landis* at 255. *See also C3* at 792. In *Ampetrol*, the court found that the mere fact of deposition discovery in the civil case would be a sufficient hardship on the prosecution in the criminal case. In particular, the court found that "[i]t would be impossible to limit the educational effect of a deposition on a witness, or the impact that the mere designation of discovery here might have in affecting strategy in the criminal proceeding." *Ampetrol* at 322.

In *St. Paul Fire*, the court allowed a stay of six to nine months to allow for the completion of the criminal investigation and/or grand jury proceedings and, if an indictment was issued, through the period of trial. *St. Paul Fire* at 517. In *Ampetrol*, the court allowed a stay of at least 6 months, pending completion of the related criminal trial. *Ampetrol* at 322.

Defendant's motion to suspend the present action satisfies the *St. Paul Fire* three-part test. First, based on the Subcommittee Report, the KPMG deferred prosecution documents, and the superseding indictment, it is clear that Larson, Pfaff, and Larson/Pfaff entities, were central players in the KPMG illegal tax shelter conspiracy–they played key roles in developing, promoting, and implementing the illegal shelters. Larson, Pfaff, and their entities received

millions of dollars in fees as a result of their pervasive participation in the conspiracy. Moreover, they utilized illegal tax shelters to generate illusory losses to evade taxes on the fee income received from the conspiracy. The transactions involved in this case were one facet of the attempt to shelter the illegal tax shelter fees received by Larson, Pfaff, and their entities from taxation. The facts surrounding Larson, Pfaff, and the Larson/Pfaff entities involved in this case are inseparably intertwined with the individuals (indicted and unindicted), entities, and facts that will be the subject to the criminal trial, especially with respect to the evasion of taxes by Larson, Pfaff, and the Larson/Pfaff entities. Thus, it is clear that the facts in this case are more than sufficiently related to the criminal case to warrant a suspension of proceedings here.[20]

With respect to the second part of the test, to allow discovery to proceed in this case now will create clear hardship and inequity. If discovery is allowed to go forward in this case, including the initial disclosures required by RCFC 26(a)(1), it could interfere with the criminal case and ongoing investigation in New York by allowing Larson and Pfaff to gain a preview of the criminal case against them. Specifically, they would be able to obtain testimony of potential Government witnesses in the criminal case through depositions in this case. On the other hand, it is likely that Larson and Pfaff, other indicted persons, and witnesses still under criminal investigation who may have knowledge about the facts of this case, would invoke their Fifth Amendment rights if depositions are taken in this case before the criminal case is resolved because of the overlapping factual matters. In addition, proceeding with the initial disclosures and other discovery at this juncture would impair the case development by the Tax Division

[20] The facts relied upon to support this motion are taken from public information. If the Court is unable to determine whether the facts in this case and the criminal case are sufficiently related based on that public information, defendant requests that it be given an opportunity to submit a sealed affidavit from the New York United States Attorney's Office to establish the factual relationship between this case and the criminal case.

 

attorney assigned to defend this case because he lacks access to information currently protected from disclosure by FRCP 6(e). Waiting until the criminal case and ongoing investigation are resolved would enable the Tax Division attorney to obtain access to information developed by the grand jury, either by showing a particularized need sufficient to obtain an order of disclosure under Fed.R.Crim.P. 6(e), or by obtaining access to information which may be made public after the prosecution of the criminal case is complete.[21] Discovery at this time would also undermine defendant's effective examination of witnesses because its attorney in this case does not have access to grand jury materials that could be critical to effective and complete examinations. Thus, it is clear that there would be hardship, inequity, and prejudice to both the criminal case and this case if the proceedings in this case are not stayed while the criminal case goes forward.

Finally, because the trial in the criminal case is scheduled for September 11, 2006, suspending proceedings in this case until after the criminal proceedings are resolved is not an unreasonable delay in the proceedings in this case.

**CONCLUSION**

As the Senate Subcommittee Report, the KPMG deferred prosecution documents, and the superseding indictment demonstrate, the KPMG illegal tax shelter conspiracy generated billions of dollars in phony tax losses and involved a large number of individuals, many of whom are professionals, including lawyers and accountants. The illegal tax shelter criminal proceedings are enormously important with respect to the effective administration of the Internal Revenue laws, and this case is just one facet of the overall conspiracy. Thus, as a result of grand jury secrecy, Fifth Amendment considerations, and the danger that events in this case could compromise the criminal prosecution, proceedings in this case should be suspended until after

[21] Additionally, if Larson and Pfaff are convicted in the criminal case, it may lead to a more efficient resolution in this case.

the criminal case has been resolved. As a practical matter, discovery will not be feasible until after that trial, which is set to begin on September 11, 2006, and assuming conviction, after any sentencing proceeding has ended. Based on the foregoing, defendant respectfully moves that the instant case be stayed until resolution of the pending criminal case against John Larson and Robert Pfaff.

Respectfully submitted,

November 30, 2005
Date

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
Of Counsel

Attorneys for Defendant

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-576 T
(Judge Allegra)

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant

DECLARATION OF DAVID R. HOUSE

I, David R. House, pursuant to 28 U.S.C., Section 1746, declare as follows:

1. I am the Department of Justice trial attorney assigned to defend the above-captioned case.

2. I have obtained copies of certain documents (attached hereto) from the website maintained by the United States Attorney's Office for the Southern District of New York, http://www.usdoj.gov/usao/nys/pressrelease2005.html, that are relevant to this case.

3. The following exhibits are true and correct copies of the foregoing documents:

Exhibit 1: KPMG Prosecution Agreement;

Exhibit 2: KPMG Information;

Exhibit 3: KPMG Statement of Facts;

Exhibit 4: Superseding Indictment, United States v. Stein, et al., 05 Crim.888 (LAK) (SDNY)

Exhibit 5: Superseding Indictment Press Release

I declare under penalty of perjury, that the foregoing is true and correct. Executed in Washington, D.C., on November 30, 2005.

s/ David R. House
DAVID R. HOUSE
Trial Attorney
Tax Division
Court of Federal Claims Section
U.S. Department of Justice