**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 26, 2005

Robert S. Bennett, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111

**Re: KPMG – Deferred Prosecution Agreement**

Dear Mr. Bennett:

Pursuant to our discussions and written exchanges, the United States Attorney's Office for the Southern District of New York (the "Office") and the defendant KPMG LLP ("KPMG"), by its undersigned attorneys, pursuant to authority granted by its Board of Directors in the form of a Board Resolution (a copy of which is attached hereto as Exhibit A), hereby enter into this Deferred Prosecution Agreement (the "Agreement").

## The Criminal Information

1. KPMG will consent to the filing of a one-count Information (the "Information") in the United States District Court for the Southern District of New York (the "Court") charging KPMG with participating in a conspiracy in violation of 18 U.S.C. § 371 to (i) defraud the United States and its agency the Internal Revenue Service (hereinafter "IRS"); (ii) commit tax evasion in violation of 26 U.S.C. § 7201; and (iii)

make and subscribe false and fraudulent tax returns, and aid and assist in the preparation and filing of said tax returns in violation of 26 U.S.C. § 7206. A copy of the Information is attached hereto as Exhibit B.

**Acceptance of Responsibility for Violation of Law**

2. KPMG admits and accepts that, as set forth in detail in the Statement of Facts, attached hereto as Exhibit C, through the conduct of certain KPMG tax leaders, partners, and employees, during the period from 1996 through 2002, KPMG:

> Assisted high net worth United States citizens to evade United States individual income taxes on billions of dollars in capital gain and ordinary income by developing, promoting and implementing unregistered and fraudulent tax shelters. A number of KPMG tax partners engaged in conduct that was unlawful and fraudulent, including: (i) preparing false and fraudulent tax returns for shelter clients; (ii) drafting false and fraudulent proposed factual recitations and representations as part of the documentation underlying the shelters; (iii) issuing opinions that contained those false and fraudulent statements and that purported to rely upon those representations, although the KPMG tax partners and the high net worth individual clients knew they were not true; (iv) actively taking steps to conceal from the IRS these shelters and the true facts regarding them; and (v) impeding the IRS by knowingly failing to locate and produce all documents called for by IRS summonses and misrepresenting to the IRS the nature and extent of KPMG's role with respect to certain tax shelters.

3. KPMG agrees that it will pay a total of $456,000,000 to the United States as part of this Agreement, which payments are attributable to the following: a fine consisting of disgorgement of $128,000,000 of fees received by KPMG from the activities described in the Statement of Facts; restitution to the IRS of $228,000,000 for

actual losses suffered as a result of, among other things, the running of statutes of limitations because of among other things, KPMG's failure to register its tax shelters, KPMG's failure to disclose its participation in certain fraudulent shelter transactions to the IRS in response to summonses, and KPMG's misrepresentation to the IRS of its involvement in those transactions, as detailed in the Statement of Facts; and an IRS penalty of $100,000,000 to settle the IRS's promoter penalty examination of KPMG pursuant to the closing agreement described in paragraph 19, below. KPMG agrees that it will satisfy this obligation with an initial payment of $256,000,000 to be paid on or before September 1, 2005, a second payment of $100,000,000 to be paid on or before June 30, 2006, and the remaining balance of $100,000,000 to be paid on or before December 21, 2006. In the event that KPMG fails to make these payments on a timely basis, the Office, in its sole discretion, can treat the failure to pay as a violation of the terms of the Agreement or require KPMG to extend the length of the Deferred Prosecution for a period of up to an additional eighteen (18) months.

4. KPMG agrees that no portion of the $456,000,000 that KPMG has agreed to pay to the United States under the terms of this Agreement is deductible on any Federal or State tax or information return.

5. KPMG has represented to the United States that no portion of the $456,000,000 that it has agreed to pay to the United States under the terms of this Agreement will be covered by any insurance policy in existence at the time of the

conduct alleged in the Information or at the time any notice of claim was made to its insurer(s), which representation was material to the United States in determining KPMG's ability to make full restitution and pay penalties to the United States, which amounts, in the Government's view, were far in excess of the $456,000,000 agreed to herein. KPMG agrees that, in the event that any portion of KPMG's $456,000,000 obligation to the United States is ultimately covered by insurance, 50 percent of any insurance funds received by KPMG shall be remitted to the United States. The payment to the United States of a portion of the amounts received from insurance shall be over and above the $456,000,000 that KPMG has agreed to pay, but in no event shall the total payments made by KPMG to the United States (which total payments includes both the underlying $456,000,000 and insurance proceeds) exceed $600,000,000. In addition, KPMG agrees that it will not enter into any agreement or understanding with its insurance carrier(s) to receive insurance coverage for any portion of that $456,000,000 in exchange for increased insurance premium payments made by KPMG in the future.

**<u>Permanent Restrictions On And Elevated Standards For KPMG's Tax Practice</u>**

6. KPMG agrees to the following permanent restrictions and elevated standards for its tax practice:

(a). KPMG will cease its private client tax practice by February 28, 2006, and will take on no new clients or engagements in its private client tax practice after the signing of this Agreement (provided, however, that it will not be a violation of

this provision for KPMG, during the 30 days following the signing of this Agreement, inadvertently to take on a new client or engagement, provided that the engagement is promptly terminated upon discovery of the error);

(b). KPMG will cease its compensation and benefits tax practice (exclusive of technical expertise maintained within its Washington National Tax practice) by February 28, 2006, or by such other later date as is reasonably determined by the Monitor, and promptly after the signing of this Agreement will commence a process to transition out of this practice;

(c). KPMG will not develop or assist in developing, market or assist in marketing, sell or assist in selling, or implement or assist in implementing, any pre-packaged tax product;

(d). KPMG will not participate in marketing, implementing, or issuing any "covered opinion" (as defined below in subparagraph (i)(I)) with respect to any "listed transaction" (as defined below in subparagraph (i)(III));

(e). KPMG will not provide any tax services under any conditions of confidentiality (as defined in 26 C.F.R. § 1.6011-4(b)(3)(ii));

(f). KPMG will not charge or accept fees subject to contractual protection (as defined in 26 C.F.R. § 1.6011-4(b)(4)) or any fees that are not based exclusively on the number of hours worked at set hourly rates, which rates may not exceed twice KPMG's standard rates, provided that (I) KPMG may charge or accept fees

described in 31 C.F.R. § 10.27(b) in the case of reverse sales and use tax audits, (II) KPMG may enter into arrangements to limit the total fees in any matter to a maximum amount or to limit fees to a specified amount per return, in each case where the fees to be charged under such arrangement would not exceed the amount that would be charged if the fees were instead based on the number of hours worked at hourly rates not more than twice KPMG's standard rates, and (III) this subparagraph (f) does not apply with respect to engagements involving a claim for refund or application for other tax incentives where the claim or application has been filed prior to the date of this Agreement;

(g). KPMG will comply with the ethics and independence rules concerning independence, tax services, and contingent fees as adopted by the Public Company Accounting Oversight Board on July 26, 2005, or as thereafter amended, as of the effective date of those rules;

(h). Except as provided in subparagraphs (a) or (k), KPMG will not prepare tax returns, or provide tax advice of any kind to any individual clients except that KPMG will be permitted to provide: (I) individual tax planning and compliance services to individuals who are owners or senior executives of privately held business clients of KPMG, (II) individual tax services as part of its international executive services practice, which provides advice regarding the tax obligations of personnel of public company or private entity clients of KPMG who are stationed outside of their home country, and (III) bank trust outsourcing services where KPMG prepares trust tax returns for trust

departments of large financial institutions;

(i). KPMG will comply with the minimum opinion thresholds set forth in the following table for opinions issued after September 28, 2005, and will comply with the minimum return position thresholds set forth in the following tables for tax returns that are filed after October 17, 2005:

| | Standard for: | Standard for: | Standard for: | Standard for: |
|---|---|---|---|---|
| **CLIENT TYPE** | **Covered Opinion on Principal Purpose Transactions** | **Tax Return Preparation on Principal Purpose or Listed Transactions** | **Covered Opinion on Other Transactions** | **Tax Return Preparation on Other Transactions** |
| Individuals | Should | Should | Should | More likely than not |
| Other private entities | Should | Should | Should | More likely than not |
| Large private entities | Should | Should | More likely than not | Realistic possibility of success |
| Public companies | Should | Should | More likely than not | Realistic possibility of success |

For purposes of this subparagraph (i):

(I) The term "covered opinion" has the meaning set forth in 31 C.F.R. § 10.35(b)(2), and for purposes of this Agreement it is not interpreted to include: (A) any advice rendered to any entity for purposes of permitting that entity or its auditors (including KPMG, when KPMG acts as auditor of the entity) to determine whether a previously booked tax benefit is required to be reversed pursuant to FAS 109 (taking into account the provisions of the proposed interpretation thereof released by the Financial Accounting Standards Board on July 14, 2005 and any subsequent interpretations) or any similar provisions of international accounting standards, or (B) any advice rendered within KPMG for purposes of determining whether the firm, when acting as auditor of any entity, can attest to the manner in which the entity's financial statements reflect any tax benefit or contingent liability for unpaid taxes pursuant to FAS 109 (taking into account the provisions of the proposed interpretation thereof released by the Financial Accounting Standards Board on July 14, 2005 and any subsequent interpretations) or any similar provisions of

international accounting standards;

(II) The term "principal purpose transaction" has the meaning set forth in 31 C.F.R. §§ 10.35(b)(2)(i)(B) and 10.35(b)(10);

(III) The term "listed transaction" has the meaning set forth in 31 C.F.R. § 10.35(b)(2)(i)(A);

(IV) The term "large private entity" means any privately held entity with prior year gross revenues of $300,000,000 or more, but only if the audited financial statements of the entity are prepared (1) in a manner that is comparable in all material respects to FAS 109 (including the proposed interpretation thereof released by the Financial Accounting Standards Board on July 14, 2005 and any subsequent interpretations), <u>and</u> (2) are either prepared in accordance with U.S. GAAP or are prepared in accordance with international / foreign country financial reporting standards;

(V) In the event the Treasury Department promulgates regulations or rules of practice establishing higher standards than those set forth in the table above, the above table will be deemed amended to incorporate such higher standards;

(VI) KPMG will collect in a central location all covered opinions issued during the 30 days following the date of this Agreement in order to facilitate review of those opinions by KPMG's compliance office and by the Monitor; and

(VII) In order to provide a limited exception to the standards set forth in the above table for "tax returns preparation on other transactions" for "individuals" and for "other private entities," for situations that are difficult to foresee and that (A) are identified shortly before the due date of the return, and (B) do not meet the elevated standards set forth in the above table, the parties agree that if, despite the exercise of reasonable due diligence, KPMG discovers within sixty days of the date on which a tax return is required to be filed (taking into account applicable extensions) that a position taken on the return does not meet the applicable standard set forth above for "other transactions," then KPMG will recommend to the client the adoption of an alternative return position that does meet the applicable standard, and if such alternative position is rejected by the client, KPMG will resign from its engagement to prepare or review the tax return unless (A) the taxpayer agrees to include a disclosure statement with the tax return on Form 8275-R (or any similar form prescribed by the IRS that includes a detailed description of the transaction and the position taken on the tax return), and (B) the completion of the engagement is

approved by KPMG's tax compliance personnel. KPMG will compile in a central location, available for review by the IRS and the Monitor, copies of all Forms 8275-R (or similar form described above) prepared by KPMG pursuant to this paragraph of the Agreement. The Monitor may review the application of this exception and recommend changes as appropriate.

(j). KPMG will not rely on an opinion issued by other professional firms to determine whether it complies with the minimum standards set forth in subparagraph (i) above unless KPMG concurs with the conclusions of such opinion; and

(k). With respect to KPMG's federal, state and local tax controversy representation, (I) KPMG will not represent persons or entities other than public companies, private entities, or persons for whom KPMG is permitted to prepare tax returns under subparagraph (h); (II) KPMG will not defend any transaction that is or becomes a "listed transaction," and (III) after February 28, 2006, KPMG will not defend any transaction with respect to which the firm could not render an opinion or prepare a return in compliance with the standards set forth in subparagraph (i).

**Cooperation**

7. KPMG acknowledges and understands that its cooperation with the criminal investigation by the Office is an important and material factor underlying the Office's decision to enter into this Agreement, and, therefore, KPMG agrees to cooperate fully and actively with the Office, the IRS, and with any other agency of the government designated by the Office ("Designated Agencies") regarding any matter relating to the Office's investigation about which KPMG has knowledge or information.

8. KPMG agrees that its continuing cooperation with the Office's investigation shall include, but not be limited to, the following:

(a). Completely and truthfully disclosing all information in its possession to the Office and the IRS about which the Office and the IRS may inquire, including but not limited to all information about activities of KPMG, present and former partners, employees, and agents of KPMG;

(b). Providing to the Office, by December 31, 2005, a complete and truthful analysis and complete and detailed description of the design, marketing and implementation by KPMG of all the transactions listed on Exhibit A to the IRS Closing Agreement described below in paragraph 19, including where necessary and appropriate a detailed description of representative client transactions;

(c). Volunteering and providing to the Office any information and documents that come to KPMG's attention that may be relevant to the Office's investigation;

(d). Assembling, organizing, and providing, in responsive and prompt fashion, and, upon request, expedited fashion, all documents, records, information, and other evidence in KPMG's possession, custody, or control as may be requested by the Office or the IRS;

(e). Not asserting, in relation to the Office, any claim of privilege (including but not limited to the attorney-client privilege and the work product

protection) as to any documents, records, information, or testimony requested by the Office related to its investigation, provided that:

(I) notwithstanding the provisions of this subparagraph (e), KPMG may assert the attorney-client privilege, work product protection, or other privileges with respect to (A) privileged communications between KPMG and its counsel that post-date February 1, 2004 and that concern the Office's investigation, (B) privileged communications between KPMG and Skadden, Arps, Slate, Meagher & Flom LLP, concerning the IRS's promoter penalty audit, or (C) any private civil litigation; and

(II) by producing privileged materials pursuant to this subparagraph (e), KPMG does not intend to waive the protection of the attorney-client privilege, work product protection, or any other applicable privilege as to third parties.

(f). Using its reasonable best efforts to make available its present and former partners and employees to provide information and/or testimony as requested by the Office and the IRS, including sworn testimony before a grand jury or in court proceedings, as well as interviews with law enforcement authorities, and to identify witnesses who, to KPMG's knowledge and information, may have material information concerning the Office's investigation, including but not limited to the conduct set forth in the Information and the Statement of Facts;

(g). Providing testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of

documents or physical evidence in any criminal or other proceeding as requested by the Office or the IRS, including information and testimony concerning the Office's investigation, including but not limited to the conduct set forth in the Information and the Statement of Facts; and

(h). With respect to any information, testimony, documents, records or physical evidence provided by KPMG to the Office or a grand jury, KPMG consents to any and all disclosures of such materials to such Designated Agencies as the Office, in its sole discretion, deems appropriate. With respect to any such materials that constitute "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure, KPMG further consents to: (I) any order sought by the Office permitting such disclosures; and (II) the Office's ex parte or in camera application for such orders.

9. KPMG agrees that its obligations to cooperate will continue even after the dismissal of the Information, and KPMG will continue to fulfill the cooperation obligations set forth in this Agreement in connection with any investigation, criminal prosecution or civil proceeding brought by the Office or by or against the IRS or the United States relating to or arising out of the conduct set forth in the Information and the Statement of Facts and relating in any way to the Office's investigation. KPMG's obligation to cooperate is not intended to apply in the event that a prosecution against KPMG by this Office is pursued and not deferred.

**Deferral of Prosecution**

10. In consideration of KPMG's entry into this Agreement and its commitment to: (a) accept and acknowledge responsibility for its conduct; (b) cooperate with the Office and the IRS; (c) make the payments specified in this Agreement; (d) comply with Federal criminal laws, including Federal tax laws; and (e) otherwise comply with all of the terms of this Agreement, the Office shall recommend to the Court that prosecution of KPMG on the Information be deferred for the period through December 31, 2006. KPMG shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Southern District of New York for the period during which this Agreement is in effect.

11. The Office agrees that, if KPMG is in compliance with all of its obligations under this Agreement, the Office will, at the expiration of the period of deferral (including any extensions thereof), seek dismissal without prejudice as to KPMG of the Information filed against KPMG pursuant to paragraphs 1 and 10 of this Agreement. Except in the event of a violation by KPMG of any term of this Agreement, the Office will bring no additional charges against KPMG relating to its: (1) development, marketing, and implementation of FLIP, OPIS, BLIPS, and SOS and their variants, as described in the Statement of Facts, or any of the transactions described in

Exhibit A to the Closing Agreement described below in paragraph 19; and (2) efforts to impair and impede the IRS and Senate investigations by concealing such transactions, as described in the Statement of Facts and Information. This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than KPMG. KPMG and the Office understand that the Agreement to defer prosecution of KPMG must be approved by the Court, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to approve the Agreement to defer prosecution for any reason, both the Office and KPMG are released from any obligation imposed upon them by this Agreement, and this Agreement shall be null and void.

12. It is further understood that should the Office in its sole discretion determine that KPMG has, after the date of the execution of this Agreement: (a) given false, incomplete or misleading information, (b) committed any crime other than a minor state violation, or (c) otherwise violated any provision of this Agreement, KPMG shall, in this Office's sole discretion, thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including but not limited to a prosecution based on the Information or the conduct described therein. Any such prosecution may be premised on any information provided by or on behalf of KPMG to the Office or the IRS at any time. Any such prosecutions that are not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced

against KPMG within the applicable period governing the statute of limitations. In addition, KPMG agrees to toll, and exclude from any calculation of time, the running of the criminal statute of limitations for a period of 5 years from the date of the execution of this Agreement. By this Agreement, KPMG expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of KPMG's counsel.

13. It is further agreed that in the event that the Office, in its sole discretion, determines that KPMG has violated any provision of this Agreement, including KPMG's failure to meet its obligations under this Agreement: (a) all statements made by or on behalf of KPMG to the Office and the IRS, including but not limited to the Statement of Facts, or any testimony given by KPMG or by any agent of KPMG before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the Office against KPMG; and (b) KPMG shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of KPMG before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or

otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

14. KPMG agrees that, in the event that the Office determines during the period of deferral of prosecution described in paragraph 10 above (or any extensions thereof) that KPMG has violated any provision of this Agreement, a one-year extension of the period of deferral of prosecution may be imposed in the sole discretion of the Office, and, in the event of additional violations, such additional one-year extensions as appropriate, but in no event shall the total term of the deferral-of-prosecution period of this Agreement exceed five years.

15. KPMG agrees that it shall not, through its attorneys, agents, partners, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations in this Agreement. Consistent with this provision, KPMG may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not contradict the Statement of Facts or such representations. Any such contradictory statement by KPMG, its present or future attorneys, agents, partners, or employees shall constitute a breach of this Agreement and KPMG thereafter shall be subject to prosecution as specified in paragraphs 10 through 13, above, or the deferral-of-prosecution period shall be extended pursuant to paragraph 14, above. The decision as to whether any such contradictory statement will be imputed to KPMG for the purpose of determining whether KPMG has

breached this Agreement shall be at the sole discretion of the Office. Upon the Office's notifying KPMG of any such contradictory statement, KPMG may avoid a finding of breach of this Agreement by repudiating such statement both to the recipient of such statement and to the Office within 48 hours after receipt of notice by the Office. KPMG consents to the public release by the Office, in its sole discretion, of any such repudiation.

**The Compliance & Ethics Program**

16. In addition to the remedial actions that KPMG has taken to date, KPMG shall implement and maintain an effective compliance and ethics program that fully comports with the criteria set forth in Section 8B2.1 of the United States Sentencing Guidelines (the "Compliance & Ethics Program"). As part of the Compliance & Ethics Program, KPMG shall maintain a permanent compliance office and a permanent educational and training program relating to the laws and ethics governing the work of KPMG's partners and employees, paying particular attention to practice areas that pose high risks, including the determination whether transactions in which KPMG and its clients are involved constitute "reportable transactions" within the meaning of 26 C.F.R. § 1.6011-4(b), and the determination of whether the appropriate level for opinions and advice set forth in paragraph 6(i) of this Agreement and all applicable laws have been satisfied. KPMG agrees that all KPMG professionals and any employees of KPMG shall receive appropriate training pursuant to the Compliance & Ethics Program within one

year of the execution of this Agreement, and shall be given such training on a regular basis but in any event no less than annually for the tax practice and no less than every two years for other practices at KPMG. Also as part of the Compliance & Ethics Program, KPMG shall (I) ensure that an effective program be maintained to punish violators of laws, policies, and standards, and reward those who report such violators; (II) ensure that no partner, employee, agent, or consultant of KPMG is penalized in any way for providing information relating to KPMG's compliance or noncompliance with laws, policies, and standards to any KPMG official, government agency, compliance officer, or the Monitor appointed pursuant to paragraph 18; and (III) ensure that all KPMG partners and employees have access to a hot-line or other means to provide information to KPMG's compliance office relating to KPMG's compliance or noncompliance with laws, policies, and standards. KPMG shall take steps to audit the Compliance & Ethics Program to ensure it is carrying out the duties and responsibilities set out in this Agreement.

17. KPMG shall take such additional personnel actions for wrongdoing as are warranted.

**Independent Monitor**

18. KPMG agrees to oversight and monitoring by a monitor appointed by the Office as described below (hereinafter the "Monitor"), whose powers, rights and responsibilities shall be as set forth below.

(a). Jurisdiction, Powers, and Oversight Authority. The Monitor shall:

(I). review and monitor KPMG's compliance with this Agreement and make such recommendations as the Monitor believes are necessary to comply with this Agreement;

(II). review and monitor KPMG's maintenance and execution of the Compliance & Ethics Program and recommend such changes as are necessary to ensure conformity with the Sentencing Guidelines and this Agreement, and that are necessary to ensure that the Program is effective;

(III). review and monitor the implementation and execution of personnel decisions regarding individuals who engaged in or were responsible (either by act or omission) for the illegal conduct described in the Information and may require any personnel action, including termination, regarding any such individuals;

(IV). review and monitor KPMG's compliance with the restrictions on the tax practice outlined in paragraph 6 above, and recommend such changes as are necessary to comply with those restrictions; and

(V). review and monitor the operations and decisions of any practice area involving "reportable" or "listed" transactions to ensure that those practices are complying with the restrictions outlined in paragraph 6 above and all

applicable laws.

It is the intent of this Agreement that the provisions regarding the Monitor's jurisdiction, powers and oversight authority and duties be broadly construed. KPMG shall adopt all recommendations submitted by the Monitor unless KPMG objects to any recommendation and the Office agrees that adoption of such recommendation should not be required.

(b). Access to Information. The Monitor shall have the authority to take such reasonable steps, in the Monitor's view, as necessary to be fully informed about those operations of KPMG within or relating to his or her jurisdiction. To that end, the Monitor shall have:

(I). access to, and the right to make copies of, any and all books, records, accounts, correspondence, files, and any and all other documents or electronic records, including e-mails, of KPMG and its partners, agents and employees, within or relating to his or her jurisdiction.

(II). the right to interview any partner, employee, agent, or consultant of KPMG and to participate in any meeting concerning any matter within or relating to his or her jurisdiction.

The Monitor shall take appropriate steps to maintain the confidentiality of any non-public information entrusted to him or her and shall share such information only with the Office, the IRS, or any Designated Agency. The Office and KPMG agree that the

Monitor's performance of his or her duties pursuant to this Agreement constitutes a "quality review" pursuant to 26 C.F.R. § 301.7216-2(o). In addition, to further facilitate the Monitor's performance of his duties and to effectuate the intent of this Agreement, KPMG consents to the entry of an order pursuant to 26 U.S.C. § 7216(b)(1)(B) permitting disclosures by KPMG to the Monitor (and any agents of the Monitor), and by the Monitor to the Office. A proposed order is attached hereto as Exhibit D. It is the intent of the parties to this Agreement that this proposed Order be issued by the Court contemporaneous with the Court's acceptance of this Agreement.

(c). Hiring Authority. The Monitor shall have the authority to employ legal counsel, consultants, investigators, experts, and any other personnel necessary to assist in the proper discharge of the Monitor's duties.

(d). Implementing Authority. The Monitor shall have the authority to take any other actions that are necessary to effectuate his or her oversight and monitoring responsibilities.

(e). Miscellaneous Provisions.

(I). Term. The Monitor's authority set forth herein shall extend for a period of three years from the Monitor's entry on duty, except that in the event the Office determines during the period of the Monitorship (or any extensions thereof), that KPMG has violated any provision of this Agreement, a one-year extension of the period of the Monitorship may be imposed in the sole

discretion of the Office, and, in the event of additional violations, an additional one-year extension, but in no event shall the total term of the Monitorship exceed five years.

(II). Selection of the Monitor. The Office shall consult with KPMG using its best efforts to select and appoint a mutually acceptable Monitor (and any replacement Monitors, if required) as promptly as possible. In the event that the Office is unable to select a Monitor acceptable to KPMG, the Office shall have the sole right to select a Monitor (and any replacement Monitors, if required).

(III). Notice regarding the Monitor; Monitor's Authority to Act on Information received from Employees; No Penalty for Reporting. KPMG shall establish an independent, toll-free answering service to facilitate communication anonymously or otherwise with the Monitor. Within 10 days of the commencement of the Monitor's duties, KPMG shall advise each of its partners and employees in writing of the appointment of the Monitor, the Monitor's powers and duties as set forth in this Agreement, the toll-free number established for contacting the Monitor, and email and mail addresses designated by the Monitor. Such notice shall inform employees that they may communicate with the Monitor anonymously or otherwise, and that no partner, agent, consultant, or employee of KPMG shall be penalized in any way for

providing information to the Monitor. In addition, such notice shall direct that, if a partner or employee is aware of any violation of any law or any unethical conduct that has not been reported to an appropriate federal, state or municipal agency, the partner and employee is obligated to report such violation or conduct to KPMG's compliance office or the Monitor.

(IV). Reports to the Office. The Monitor shall keep records of his or her activities, including copies of all correspondence and telephone logs, as well as records relating to actions taken in response to correspondence or telephone calls. If potentially illegal or unethical conduct is reported to the Monitor, the Monitor may, at his or her option, conduct an investigation, and/or refer the matter to KPMG's compliance office, the Office, the IRS, or a Designated Agency. The Monitor may report to the Office whenever the Monitor deems fit but, in any event, shall file a written report not less often than every four months regarding: the Monitor's activities; whether KPMG is complying with the terms of this Agreement; and any changes that are necessary to foster KPMG's compliance with any applicable laws and standards. Such periodic written reports are to be provided to KPMG and the Office. The Office may, in its sole discretion, provide all or part of any such periodic written report, or other information provided to the Office by the Monitor, to the IRS or any Designated Agency. Should the Monitor determine that it appears that KPMG

has violated any law, has violated any provision of this Agreement, or has engaged in any conduct that could warrant the modification of his or her jurisdiction, the Monitor shall promptly notify the Office, and when appropriate, KPMG.

(V). Cooperation with the Monitor. KPMG and all of its partners, employees, agents, and consultants shall have an affirmative duty to cooperate with and assist the Monitor in the execution of his or her duties and shall inform the Monitor of any information that may relate to the Monitor's duties or lead to information that relates to his or her duties. Failure of any KPMG partner, employee, or agent to cooperate with the Monitor may, in the sole discretion of the Monitor, serve as a basis for the Monitor to recommend dismissal or other disciplinary action.

(VI). Compensation and Expenses. The compensation and expenses of the Monitor, and of the persons hired under his or her authority, shall be paid by KPMG. The Monitor, and any persons hired by the Monitor, shall be compensated in accordance with their respective typical hourly rates. KPMG shall pay bills for compensation and expenses promptly, and in any event within 30 days. In addition, within one week after the selection of the Monitor, KPMG shall make available office space, telephone service and clerical assistance sufficient for the Monitor to carry out his or her duties.

(VII). Indemnification. KPMG shall provide an appropriate indemnification agreement to the Monitor with respect to any claims arising out of the performance of the Monitor's duties.

(VIII). No Affiliation. The Monitor is not, and shall not be treated for any purpose, as an officer, employee, agent, or affiliate of KPMG.

**Closing Agreement With The IRS**

19. Contemporaneously with the execution of this Agreement, KPMG and the IRS will enter into a closing agreement pursuant to 26 U.S.C. § 7121 providing for enhanced oversight and regulatory compliance and resolving the examination of KPMG under 26 U.S.C. §§ 6694, 6700, 6701, 6707, 6708, 7407, and 7408, and pursuant to which KPMG will pay the $100,000,000 promoter penalty described in paragraph 3 above. The closing agreement provides, among other things, that following termination of the three-year term of the Monitor (and any extensions thereof), the IRS will monitor KPMG's compliance with the restrictions and elevated standards established by paragraph 6 of this Agreement for a period of two years, provided however that in no event shall the period of IRS monitoring extend beyond the five-year anniversary of the Monitor's entry on duty. KPMG's failure to comply with any provision of the closing agreement shall constitute a violation of this Agreement.

**The Office's Discretion**

20. KPMG agrees that it is within the Office's sole discretion to choose, in

the event of a violation, the remedies contained in paragraphs 10 through 13 above, or instead to choose to extend the period of deferral of prosecution pursuant to paragraph 14 and/or to extend the period of the Monitorship pursuant to paragraph 18. KPMG understands and agrees that the exercise of the Office's discretion under this Agreement is unreviewable by any court. Should the Office determine that KPMG has violated this Agreement, the Office shall provide notice to KPMG of that determination and provide KPMG with an opportunity to make a presentation to the Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the period of deferral of prosecution or the period of the Monitorship.

**No Department Of Justice Debarment**

21. KPMG has been involved in an engagement to audit the Department of Justice's financial statements. The Department of Justice's debarring official has determined that KPMG is currently a responsible contractor. The debarring official has determined that suspension or debarment of KPMG is not warranted because KPMG has agreed to the terms of this Deferred Prosecution Agreement, in which, among other things, KPMG has admitted its involvement in unlawful conduct and has agreed to take steps to ensure that KPMG, its leadership, partners, personnel, and clients will adhere to the highest standards of ethics and compliance with the United States tax laws.

**Limits Of This Agreement**

22. It is understood that this Agreement is binding on the Office and the Department of Justice but specifically does not bind any other Federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, if requested by KPMG or its attorneys, the Office will bring to the attention of any such agencies, including but not limited to any licensing authorities, the Agreement, the cooperation of KPMG and its compliance with its obligations under this Agreement.

**Public Filing**

23. KPMG and the Office agree that, upon filing of the Information in accordance with paragraph 1 and 10 hereof, this Agreement (including the Statement of Facts and the other attachments hereto) shall be filed publicly in the proceedings in the United States District Court for the Southern District of New York.

**Integration Clause**

24. This Agreement sets forth all the terms of the Deferred Prosecution

Agreement between KPMG and the Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, KPMG's attorneys, and a duly authorized representative of KPMG.

DAVID N. KELLEY
United States Attorney
Southern District of New York

By: ______________________
Justin S. Weddle
Kevin M. Downing
Stanley J. Okula, Jr.
Assistant United States Attorneys

______________________
Shirah Neiman
Chief Counsel to the U.S. Attorney

______________________
Celeste Koeleveld
Chief, Criminal Division

Accepted and agreed to:

______________________
Skadden, Arps, Slate, Meagher & Flom LLP
Robert S. Bennett, Esq.
Carl S. Rauh, Esq.
Armando Gomez, Esq.
Joseph L. Barloon, Esq.
Matthew D. Michael, Esq.
Attorneys for KPMG LLP

______________________
KPMG LLP