No. 05-576 T
(Judge Allegra)

---

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO RCFC 12(b)(1) AND MEMORANDUM IN SUPPORT**

---

JOHN A. DiCICCO
  Acting Assistant Attorney General

STEVEN I. FRAHM
KAREN SERVIDEA
  Attorneys
  Justice Department (Tax)
  Court of Federal Claims Section
  P.O. Box 26
  Ben Franklin Post Office
  Washington, D.C.  20044
  (202) 616-3423
  (202) 514-9440 (Fax)

---

---

# TABLE OF CONTENTS

**Page(s)**

Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to RCFC 12(b)(1) and
Memorandum in Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Authorities Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.       The Tax Shelter Transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.     The FPAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    III.   The Complaint and the Deposit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.       The Court Lacks Subject Matter Jurisdiction Over the Complaint Because Larson
          Has Not Deposited the Entire Amount by which the FPAA Would Increase His
          Tax Liability for All Affected Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          A.     Plaintiff's Interpretation Is Not Supported by the Statutory Text, Produces
               Odd Results, and Would Defeat the Statute's Purpose . . . . . . . . . . . . . 11

          B.     "Tax Liability," as Used in Section 6226(e) to Determine the Required
               Deposit, Has Been Interpreted in an Analogous Partnership Context to
               Include a Partner's Tax Liability for Years Other than the Year for Which
               the FPAA Was Issued . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          C.     Plaintiff's Interpretation Is Inconsistent with this Court's Prior Decisions
               Interpreting the Statute of Limitations for Assessments Based on FPAA
               Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    II.     The Gross Disparity Between the "Deposit" and the Tax Liability Computed with
          the Adjustments Made by the FPAA Is Indicative of Bad Faith . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

§ 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3

Treasury Regulations (26 C.F.R.):

§ 301.6226(e)-1 Jurisdictional requirement for bringing an action in District Court or United States Court of Federal Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3

Appendix B: (Separately Bound):

Declaration of George J. Terpack, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1

Exhibit 1:     U.S. Return of Partnership Income (Form 1065) of Prestop for the taxable period ending December 31, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . B-12

Exhibit 2:     Excerpt from Information Document Request issued to John M. Larson by Revenue Agent Victoria Rex for the tax years 1998 and 1999. . . . . . B-22

Exhibit 3:     Excerpt from John M. Larson's response to the Information Document Request for the tax years 1998 and 1999. . . . . . . . . . . . . . . . . . . . . . . . B-23

Exhibit 4:     U.S. Income Tax Return for Estates and Trusts (Form 1041) of JL Investment Trust for taxable year 1998. . . . . . . . . . . . . . . . . . . . . . . . B-24

Exhibit 5:     U.S. Individual Income Tax Return (Form 1040) of John Larson for taxable year 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-29

Exhibit 6:      U.S. Income Tax Return for Estates and Trusts (Form 1041) of JL
                Investment Trust for taxable year 1999 . . . . . . . . . . . . . . . . . . . . . . . . B-40

Exhibit 7:      U.S. Individual Income Tax Return (Form 1040) of John Larson for
                taxable year 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-51

Exhibit 8:      U.S. Individual Income Tax Return (Form 1040) of John Larson for
                taxable year 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-69

Exhibit 9:      U.S. Individual Income Tax Return (Form 1040) of John Larson for
                taxable year 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-98

Exhibit 10:     Notice of Final Partnership Administrative Adjustment ("FPAA") for
                Prestop's taxable period ending December 31, 1997  . . . . . . . . . . . . B-125

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Barenholtz v. United States*, 784 F.2d 375 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . 16-17

*Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500 (W.D. Tex 1994) . . . . . 15

*Crnkovich v. United States*, 202 F.3d 1325 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 9

*Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418 (U.S. Tax Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006) . . . . . . . . . . . 12, 15-17

*Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505 (2007) . . . . . . . . . . . . . . 15-17

*J&J Fernandez Ventures, L.P. v. United States*, 84 Fed. Cl. 369 (2007) . . . . . . . . . . . . 17

*Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385 (2008), *reh'g denied*, 84 Fed. Cl. 378 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Kligfeld Holdings v. Commissioner*, 128 T.C. 192 (2007) . . . . . . . . . . . . . . . . . . . . . . . 17

*Marriott International Resorts, L.P. v. United States*, ____ F.3d ____, 2009 WL 3447443 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Olson v. United States*, 37 Fed. Cl. 727 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999)  13-15

**Statutes:**

1 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Internal Revenue Code of 1986 (26 U.S.C.):
    § 351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§ 358 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§ 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7-8

§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 9-10

§ 6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 9-13, 15, 17-19

§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No.97-248, §
    402(a), 96 Stat. 324, 648-67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Miscellaneous:**

H.R. Conf. Rep. No. 97-760, 97th Cong., 2d Sess. 599-600 (1982) . . . . . . . . . . . . . 9-10

Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction*
    (7th ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rules of the Court of Federal Claims 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Treas. Reg. (26 C.F.R.) § 301.6226(e)-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-576 T

(Judge Allegra)

————————————

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

————————————————

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO RCFC 12(b)(1) AND MEMORANDUM IN SUPPORT

————————————————

The United States moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), on the grounds that John M. Larson, the grantor of the trust that is the petitioner in this TEFRA proceeding, has failed to make the jurisdictional deposit required by 26 U.S.C. § 6226(e)(1).[1]   The jurisdictional deposit should equal the increase in

_____

[1]Unless otherwise noted, all references to code sections shall refer to the Internal Revenue Code of 1986, Title 26 of the United States Code, as amended and in effect during the

Larson's income tax liability that would result by treating the partnership items of Prestop

Holdings, LLC, consistently with the adjustments made by the Notice of Final Partnership

Administrative Adjustment ("FPAA") that is at issue in this case.  The Internal Revenue Service

("IRS") has computed that amount to be $835,687, exclusive of penalties and interest.  Larson

has deposited only $100.  In support of its motion, the United States relies on the following

memorandum, the Declaration of George J. Terpack, Jr. ("Terpack Decl."), contained in

Appendix B to this motion, and the exhibits attached to the Declaration.

## QUESTIONS PRESENTED

I.  Whether this Court lacks subject matter jurisdiction over the complaint, because the

jurisdictional requirement of § 6226(e)(1) requires a partner who petitions for judicial review of

an FPAA to deposit the amount by which the FPAA would increase his tax liability for all years

affected by the FPAA, and the deposit made in this case falls short of that amount.

II.  Whether the gross disparity between the "deposit" in this case and the tax liability

computed consistently with the adjustments made by the FPAA is indicative of bad faith.

---

relevant period.

## INTRODUCTION

Prestop Holdings, LLC, engaged in a variation of the "Son of Boss" tax shelter involving the short sale of U.S. Treasury securities.  In this type of shelter, a partner enters into a short sale of U.S. Treasury securities, thereby receiving the proceeds of the sale, subject to an obligation to replace the securities at a later date.  The partner then contributes the short sale position to the partnership, and the proceeds from the short sale are eventually used to satisfy the short sale obligation.  After the contribution, the partner claims an inflated basis in his partnership interest, positing that the contributed proceeds increased his basis but that the corresponding obligation to replace the securities did not decrease his basis.  Through other provisions of the Tax Code, the partner transfers the inflated basis of his partnership interest to a low value asset.  Ultimately, the partner sells the low value asset and uses the inflated basis to claim an artificial loss from the sale.  The Federal Circuit recently disallowed a loss generated by such a shelter, holding that the rules governing the calculation of partnership basis require the contributing partner to reduce the basis of his partnership interest by the amount of the short sale obligation.  *See Marriott Int'l Resorts, L.P. v. United States*, _____ F.3d _____, 2009 WL 3447443 at *1 (Fed. Cir. 2009) (per curiam).

Here, plaintiff, the JL Investment Trust, contributed a short sale of U.S. Treasury Securities to a partnership in 1997, but did not complete the Son of Boss transaction until 1998, when it sold the low value asset (shares of stock) with the transferred, inflated basis generated by the short sale contribution.  As a result, 1998 was the year in which plaintiff claimed the artificial loss of $2.6 million through the shelter transaction.  The claimed loss passed through to the trust's grantor, John M. Larson, thereby reducing his tax liability in 1998, and then was carried

forward to reduce Larson's tax liability in the years 2000 and 2001.  In 2004, the IRS issued an FPAA to Prestop for 1997, adjusting the partnership's return to prevent the basis inflation claimed by plaintiff on account of the shelter transaction.

Plaintiff now seeks a readjustment of the partnership items adjusted by the FPAA.  As a jurisdictional prerequisite to such a suit, the petitioning partner (and, in the case of a pass-through partner, all indirect partners holding partnership interests through the petitioning partner) must deposit the amount by which his tax liability would increase if computed consistently with the FPAA adjustments.  In the case of a shortfall in the deposit amount, if the Court finds that the petitioning partner made a good faith attempt to satisfy the deposit requirement, and the partner timely corrects the shortfall, the Court may order that the jurisdictional prerequisite to the suit has been satisfied.

Here, the FPAA adjustments would ultimately eliminate the $2.6 million of losses plaintiff has claimed, increasing Larson's tax liability for 1998, 2000, and 2001 by a total of approximately $836,000.  Larson has deposited only $100, however, reasoning that the FPAA adjustments would have no effect on his tax liability for the year for which the FPAA was issued – 1997.

While the FPAA adjustments to the partnership's 1997 return don't affect Larson's tax liability in that year – since plaintiff did not claim the loss generated by the shelter until 1998 – plaintiff is ignoring that the 1997 FPAA adjustments significantly increase his tax liability for 1998, 2000, and 2001.  Plaintiff's claim that a partner's deposit requirement  applies only with respect to the tax effect to him for the same year as the year for which the FPAA was issued is wrong and contrary to precedent in this Court.  Rather, to maintain a suit challenging an FPAA,

the petitioning partner (and, in the case of a pass-through partner, each of the indirect partners holding an interest through the petitioning partner) must deposit the amount by which the FPAA adjustments would increase his tax liability for all years affected by the FPAA.

Thus, Larson was required to deposit $836,000, the amount by which his tax liability would increase as a result of the FPAA adjustments.  The amount deposited, $100, does not even approach the actual tax impact of the FPAA on Larson's 1998, 2000, and 2001 liability. (Neither does it reflect the tax impact in 1997, which would be zero).  Rather, plaintiff has merely deposited a nominal sum, corresponding to nothing.  It reflects an effort to give lip service to the jurisdictional deposit requirement; it is not a "good faith" effort to satisfy it.  As a result, the complaint should be dismissed.

## AUTHORITIES INVOLVED

The pertinent portions of the authorities involved are set forth in Appendix A, *infra*.

## STATEMENT

Plaintiff, the JL Investment Trust ("plaintiff" or "the Trust"), is a grantor trust, the grantor of which is John M. Larson ("Larson").  As a grantor trust, plaintiff is a pass-through entity, the income of which is taxed to Larson.  *See* § 671 *et seq.*  (Compl. ¶ 7.)  In 1997, plaintiff held a 50% partnership interest in Prestop Holdings, LLC ("Prestop" or the "partnership").

I.      The Tax Shelter Transaction

On its U.S. Income Tax Return (Form 1041) for 1998, plaintiff claimed a short term capital loss of $2,613,003 from the alleged February 6, 1998, sale of shares of stock in a company called "Torpre."  (Ex. 4, App. B at B-28 (Schedule D, line 1).)  As reported by

plaintiff, the amount of the loss was the difference between the reported sales price of the

stock – $536,586 – and plaintiff's alleged basis in the stock – $3,149,589.  (*Id.*)  In response to

the IRS's subsequent information requests, plaintiff claimed that it had obtained the $3.1 million

basis in the stock as a transferred basis from plaintiff's basis in its former partnership interest in

Prestop, upon plaintiff's assignment of that partnership interest to Torpre.  *See* §§ 351, 358.  (Ex.

2, App. B at B-22; Ex. 3, App. B at B-23.)  As grounds for claiming a $3.1 million basis in its

former partnership interest, plaintiff alleged that on December 22, 1997, it had entered into the

short sale of Treasury Notes, receiving proceeds of $3,074,589, and that on the same day,

plaintiff had transferred those proceeds along with an additional $75,000 to the partnership.  (Ex.

3, App. B at B-23.)  According to plaintiff, it thereby obtained a basis equal to the sum of the

short sale proceeds of $3,074,589 plus the additional $75,000 contribution to the partnership, or

approximately $3.1 million.  (*Id.*)

   With respect to the short term capital loss claimed on plaintiff's 1998 return as a result of

the sale of the Torpre stock, plaintiff netted the amount of the loss ($2,613,003) against a

reported net short term gain from partnerships, S corporations and other estates of trusts of

$460,478, leaving $2,152,525 as a short term capital loss carryover into 1999.  (Terpak Decl. ¶ 8;

Ex. 4, App. B at B-28 (Schedule D, lines 3, 5).)

   Of that amount, plaintiff used $932,488 to offset short term gain reported on its 1999

income tax return (Form 1041) (Terpak Decl. ¶ 9; Ex.6, App. B at B-42 (Schedule D, lines 1, 3,

4)), and Larson used another $3,000 as a deduction from his ordinary income (Terpak Decl. ¶ 9;

Ex.6, App. B at B-43 (Schedule D, line 17); Ex. 7, App. B at B-51 (Line 13)), leaving

$1,217,037 as a short term capital loss carryover into 2000.

On his income tax return (Form 1040) for 2000, Larson used (1) $34,393 of the short term capital loss carryover from 1998 to offset short term capital gain (Terpak Decl. ¶ 10; Ex. 8, App. B at B-74 (Schedule D, lines 1, 5)); (2) $570,158 of the short term capital loss carryover to offset net long term capital gain (Terpak Decl. ¶ 10; Ex. 8, App. B at B-74 (Schedule D, line 16)); and (3) $3,000 of the short term capital loss carryover as a deduction from ordinary income (Terpak Decl. ¶ 10; Ex. 8, App. B at B-69 (line 13); *id.* at B-75 (Schedule D, line 18)), leaving $609,486 as a short term capital loss carryover available in 2001.

On Larson's income tax return (Form 1040) for 2001, the short term capital loss carryover from 1998 (claimed only in the amount of $598,456 for some unknown reason) was combined with a net short term loss from partnerships, S corporations, estates, and trust in the amount of $231,940.  (Terpak Decl. ¶ 11; Ex. 9, App. B at B-104 (Schedule D, lines 5, 6).)  The combined short term capital loss of $830,396 was then netted against $7,202 in short term capital gain and $1,387,791 in long term capital gain, leaving $564,597 in long term capital gain. (Terpak Decl. ¶ 11; Ex. 9, App. B at B-104-105 (Schedule D, lines 1, 16, 17).)

II.     The FPAA

On December 27, 2004, the IRS issued an FPAA to the partnership for its taxable period ending December 31, 1997.  The IRS adjusted the partnership item referred to as "distributions – property other than money" from zero, as originally reported on the partnership's 1997 return, to $6,149,178.  (Ex. 1, App. B at B-14 (Schedule K, line 23); Ex. 10, App. B at B-134.)  The FPAA allocated $3,074,589 of the increased distributions to plaintiff.  (Ex. 10, App. B at B-135.)  As grounds for the adjustment, the FPAA explained that obligations to close open short sales in U.S. Treasury Securities constitute "partnership liabilities" within the meaning of § 752.  (*Id.* at B-

-7-

136.)  The FPAA thus concluded that the partnership's assumption of the obligation to close the

short sale contributed by each partner decreased the individual liabilities of that partner,

triggering a constructive distribution of cash under § 752(b).  (*Id.*)  *See* § 752(b) ("Any decrease

in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual

liabilities by reason of the assumption by the partnership of such individual liabilities, shall be

considered as a distribution of money to the partner by the partnership." ).

      As applied to Larson's tax liability, the adjustment made by the FPAA would

(1) eliminate the entire short term capital loss claimed by plaintiff and passed through to Larson

in 1998, (2) create a short term capital gain of $461,586 for that year, and thus (3) increase

Larson's tax liability for 1998, as well as for 2000 and 2001.  (Terpack Decl. ¶¶ 14-18.)  That is

because under the statutory rules for computing the basis of a partnership interest, the increase in

the amount of the partnership's distributions to plaintiff would cause a proportional decrease in

plaintiff's basis of its partnership interest.  *See* § 733 ("In the case of a distribution by a

partnership to a partner other than in liquidation of a partner's interest, the adjusted basis to such

partner of his interest in the partnership shall be reduced (but not below zero) by the amount of

any money distributed to such partner . . . .").

      After that FPAA's reduction, plaintiff would be left with a basis in its partnership interest

of $75,000 (*i.e.*, $3,149,589 - $3,074,589).  According to plaintiff's basis transfer theory, that

$75,000 would become plaintiff's basis in the Torpre stock, and plaintiff would realize a

$461,586 gain, rather than the originally reported $2.6 million loss, upon the sale of the stock in

1998 for $536,586.  In turn, that adjustment would increase Larson's tax liability for 1998 by

$374,708.  (Terpack Decl. ¶ 14, 18.)  The FPAA's basis adjustment also would eliminate the

capital loss carryovers Larson claimed in 2000 and 2001 on account of the 1998 loss, increasing

his tax liability for each year by $334,267 and $126,712, respectively. (*Id*. ¶ 15-18.)

Thus, the FPAA would cause an overall increase in Larson's tax liability of $835,687,

exclusive of penalties and interest. (*Id.* ¶ 19.)

III.     The Complaint and the Deposit

Plaintiff filed the complaint with this Court on May 26, 2005. ("Compl."). In the

complaint, plaintiff petitions for judicial review of the FPAA's adjustments to Prestop's

partnership items for Prestop's taxable period ending December 31, 1997. (*Id.* ¶ 9.) Plaintiff

brought the complaint pursuant to § 6226(b).[2] (*Id.* ¶ 3.) Before instituting this suit, Larson

deposited $100 with the IRS. (Compl. ¶ 11.)

**ARGUMENT**

I.     The Court Lacks Subject Matter Jurisdiction Over the Complaint Because Larson Has
       Not Deposited the Entire Amount by which the FPAA Would Increase His Tax Liability
       for All Affected Years

Section 6226, under which this suit arises, is part of "TEFRA," the laws enacted by

Congress in 1982 to establish coordinated procedures for determining the proper treatment of

"partnership items" at the partnership level in a single, unified audit and judicial proceeding. *See*

Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402(a), 96

Stat. 324, 648-671, codified in §§ 6221-6233. *See* H.R. Conf. Rep. No. 97-760, 97th Cong., 2d

Sess. 599-600 (1982); *Crnkovich v. United States*, 202 F.3d 1325, 1329 (Fed. Cir. 2000) (per

curiam).

---

[2]Although plaintiff is the Tax Matters Partner for the partnership, it filed the complaint in
its capacity as a notice partner only. Compl. ¶¶ 2, 3.

TEFRA begins by establishing that the tax treatment of "any partnership item . . . shall be determined at the partnership level." § 6221. It then provides a series of partnership-level procedures for the IRS, the partnership, or individual partners to adjust the treatment of partnership items, and for the judicial review of any such adjustments. §§ 6223-6230. Under § 6223, the IRS can adjust the partnership items as reported by the partnership by issuing a notice of final partnership administrative adjustment or "FPAA." An individual partner can then seek judicial review of the adjustments made by the FPAA under § 6226. Such a suit can be brought in the Tax Court, a district court, or the Court of Federal Claims. § 6226(a).

As a jurisdictional prerequisite to bringing such a suit in a district court or the Court of Federal Claims, the filing partner is required to deposit "the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment." § 6226(e)(1). For civil actions beginning on or after April 2, 2002, if the petition is filed by a pass-through partner, the deposit requirement applies to "each indirect partner holding an interest through the pass-thru partner." Treas. Reg. (26 C.F.R.) § 301.6226(e)-1. The legislative history of TEFRA confirms that satisfying the "deposit requirement" is "[a] condition to filing a petition in either the appropriate district court or the claims court." *See* H.R. Conf. Rep. No. 97-760, at 603 (1982).

Here, Larson's tax liability would be increased by $835,687 if the treatment of partnership items on each return for 1997 through 2001 were made consistent with the treatment of partnership items on the partnership return, as adjusted by the FPAA. He has deposited only

$100, an amount that clearly is insufficient to reflect his increased tax liability by applying the FPAA adjustments to him.

Plaintiff defends the sufficiency of Larson's deposit by focusing only on 1997 and that the FPAA would not increase his tax liability year.  (Compl. ¶ 11, ex. B.).  While Larson's tax liability for 1997 is not altered by the FPAA, plaintiff is mistaken that the amount of the required deposit is determined only by reference to the partner's tax year corresponding to the partnership year adjusted by the FPAA.  To the contrary, § 6226(e) requires the petitioning partner to deposit the amount by which the FPAA adjustments would increase his tax liability for all affected years.  *Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385, 390 (2008), *reh'g denied*, 84 Fed. Cl. 378 (2008).

As explained below, the court's statutory analysis in *Kislev Partners* follows from Section 6226(e)'s text and purpose, as well as case law interpreting analogous TEFRA provisions.

      A.     Plaintiff's Interpretation Is Not Supported by the Statutory Text, Produces Odd Results, and Would Defeat the Statute's Purpose.

An FPAA's adjustments may have no effect on a partner's liability in the year corresponding to the partnership year the FPAA adjusts, but will often increase the petitioning partner's tax liability for other years.  For example, a partner may be unable to use a partnership loss in the year it is claimed, but will claim it in a subsequent carry forward year.  Or, as here, a partnership item reported in one year may inflate the partner's basis in his partnership interest and hence create a loss in a subsequent year when the partner disposes of the interest.  When that happens, nothing in the text of the statute limits the amount of the required deposit to the

increased tax liability of the partner for the year for which the FPAA was issued.[3]  Rather, the

statute refers to the "amount by which the tax liability of the partner would be increased."

§ 6226(e)(1).

In *Kislev*, this Court interpreted that statutory phrase to include the increased tax liability

of the petitioning partner for all years affected by the FPAA.  *Kislev*, 84 Fed. Cl. at 390.  There,

the FPAA had disallowed losses claimed by the partnership in 2002.  *Id.* at 387.  The petitioning

partner had deducted a portion of those losses in 2002 and had carried the remainder forward to

deduct in 2003, 2004, and 2005.  *Id.*  After depositing the amount of the increased tax liability

that would result from adjusting his 2002 return, but not his 2003 through 2005 returns, the

partner filed suit to challenge the FPAA.  *Id.* at 388.  Explaining that "the overarching statutory

requirement is that the total 'tax liability' be deposited," the Court held that the partner was

required to deposit the amount by which the FPAA would increase his tax liability for 2003,

2004, and 2005 as well.  *Id.* at 390; *see also Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl.

324, 326 (2006) (noting that a petitioning partner's deposit that included the amount by which an

FPAA issued for 1999 would increase the partner's tax liability for 1999 *and 2000* was "in

accordance with section 6226(e)").

_____

[3]In *Kislev*, discussed *infra*, the petitioning partner argued that the use of the singular
"return" in the statute imported that the amount of the deposit was limited to the partner's
increased tax liability for the year for which the FPAA was issued.  *Kislev*, 84 Fed. Cl. at 389.
As the Court there explained, however, under standard principles of statutory construction, a
legislative term in the singular form may be used to apply to multiple subjects or objects.  *Id.*
(citing Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47:34
(7th ed. 2007)); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress,
unless the context indicates otherwise, words importing the singular include and apply to several
persons, parties, or things . . . . ).  Thus, Congress's use of singular "return" is insufficient
support for plaintiff's position.

In addition to reading into the statute a limitation not found in its text, plaintiff's interpretation would produce the odd result that, in cases such as this, where an FPAA has no effect on the partner's tax liability in the year for which it was issued, the petitioning partner would not have to make any jurisdictional deposit.  Such a result is clearly at odds with the congressional intent that a partner be required to make a deposit before filing a suit for judicial review of an FPAA in federal court.  Indeed, Congress already provided a means for a partner to challenge an FPAA without making a deposit first – that is, by filing the petition in Tax Court.  As noted above, a partner can file such a suit in either the Tax Court, district court, or the Court of Federal Claims, whereas making a deposit is a prerequisite to filing in district court or the Court of Federal Claims only.  *See* § 6226(e)(1).  Thus, plaintiff's interpretation would disturb the jurisdictional framework established by Congress for suits brought under § 6226.

B.      "Tax Liability," as Used in Section 6226(e) to Determine the Required Deposit, Has Been Interpreted in an Analogous Partnership Context to Include a Partner's <u>Tax Liability for Years Other than the Year for Which the FPAA Was Issued</u>

The scope of the deposit requirement under § 6226(e)(1) to include the years in which benefits were claimed is also confirmed by cases that have interpreted similar language in other TEFRA provisions.  In *Olson v. United States*, 37 Fed. Cl. 727, 732 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999), this Court interpreted the definition of "tax liability" in § 6231(a)(6) to encompass adjustments to *all* of a partner's affected tax years as a result of the treatment of a partnership item under the TEFRA provisions.  Section 6231(a)(6), employing language similar to that of § 6226(e)(1), defines a "computational adjustment" as: "[T]he *change in the tax liability* of a partner which properly reflects the treatment under this subchapter of a partnership item."  (Emphasis added.)  Once a final partnership-level adjustment has been made to a

-13-

partnership item, the IRS may make a computational adjustment to a partner's tax liability without first issuing a notice of deficiency, where the determination of the deficiency involved is "merely computational" and does not require further factual investigation.  § 6230(a)(1); *Olson*, 37 Fed. Cl. at 732, *aff'd* 172 F.3d 1311 (Fed. Cir. 1999).

Such computational adjustments may, in turn, affect the amount of other items on an individual partner's return, and such items are called "affected items."  § 6231(a)(5).  If the determination of an affected item does not require partner-level factual determinations, the change in the partner's *tax liability* attributable to the change in the affected item may also be assessed by the IRS by way of computational adjustment without first issuing a notice of deficiency, regardless of the year in which the tax liability occurs.  § 6230(a)(2)(A)(i); *Olson*, 37 Fed. Cl. at 732.

In *Olson*, this Court interpreted the TEFRA provisions to permit a computational adjustment to a partner's tax liability for tax years other than the partnership's taxable year that was the subject of partnership level administrative and judicial proceedings.  In *Olson*, the proceedings at the partnership level resulted in a disallowance of a credit that was claimed by the partnership in 1983.  *Olson*, 37 Fed. Cl. at 734.  The partner claimed his distributive share of this credit on his joint individual return filed for 1983, and carried the credit back to 1980, 1981, and 1982, and forward to 1984.  *Id.*  The IRS assessed the partner for the carryforward and carryback years by way of a computational adjustment, which the partner challenged in a partner-level proceeding, contending that the assessments for those years could not be made without issuing a notice of deficiency.  *Id.*  The Court rejected the partner's challenge, holding that the IRS could assess the partner for the carryover and carryback years by way of computational adjustment.  *Id.*

at 735.  Other courts have reached the same result in similar circumstances.  *See Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418, at *3 (U.S. Tax Ct. 1996) (holding that net operating loss carryovers to later years are affected items that can be assessed by computational adjustment); *Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500, 512 (W.D. Tex. 1994) (holding that "[d]etermining the amount of a loss carryover or carryback as a result of a settlement agreement relating to partnership items requires only a computational adjustment").

Therefore, the "tax liability" of a partner includes the tax liability calculated based upon the adjustments made by the FPAA to partnership level items for all years in which those partnership items affect the partner's return, whether it is for purposes of a computational adjustment made pursuant to § 6231(a)(6), or for purposes of calculating the jurisdictional deposit of § 6226(e).

     C.     Plaintiff's Interpretation Is Inconsistent with this Court's Prior Decisions Interpreting the Statute of Limitations for Assessments Based on FPAA <u>Adjustments</u>

This Court's prior decisions regarding the statute of limitations for assessments similarly demonstrate that the concept of a partner's tax liability for changes made by an FPAA encompasses years other than the one for which the FPAA was issued.

In *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (2006) (hereinafter "*Grapevine I*"), and *Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505 (2007) (hereinafter "*Grapevine II*"),  the IRS issued an FPAA for the partnership's taxable period ending December 31, 1999.  The adjustments made by the FPAA affected a partner's individual liability for his 1999 and 2000 taxable years.  *Grapevine I*, 71 Fed. Cl. at 326.  The partner

deposited the amount of his increased tax liability for both 1999 and 2000 resulting from the adjustments made by the 1999 FPAA and then filed a motion for summary judgment, contending that the statute of limitations had expired with respect to his 1999 and 2000 taxable year with the result that the 1999 FPAA was untimely. *Id.* The defendant cross moved, asserting that the limitations period for both 1999 and 2000 remained open, although for different grounds as to each year. *Id.*

In *Grapevine I*, this Court held that the statute of limitations with respect to the year 2000 was open as to the partner's individual taxable year, denied the partner's motion for summary judgment, and granted the defendant's motion for partial summary judgment as to that year. *Id.* at 344. The Court held open its decision as to the partner's 1999 taxable year – which was the year of the partnership for which the FPAA issued – pending further development of the facts. *Id.* at 343.

In *Grapevine II*, the Court of Federal Claims held that the partner's 1999 year was closed, so the FPAA was untimely as to that year. *Grapevine II*, 77 Fed. Cl. at 512. The Court went on to hold that even though the statute of limitations barred an assessment against the partner for 1999 – the year in which the losses were claimed by the partnership and disallowed by the FPAA – the IRS was not barred from adjusting the partner's liability for 2000 due to the effect the 1999 disallowed losses had on that year. *Id.* at 512-13. The rationale for the *Grapevine II* Court's decision was that, while the statute of limitations barred assessments, it did not bar calculations. *Id.* (citing *Barenholtz v. United States*, 784 F.2d 375 (Fed. Cir. 1986)).

Therefore, the adjustments made by the FPAA for 1999 were to be used to calculate the partner's liability for the later year, even though his 1999 year was barred by the statute of limitations.[4]

Thus, *Grapevine I* and *II* demonstrate that a partner's tax liability for adjustments made by the IRS to partnership items is not limited to the effects of an FPAA on the year for which it was issued.  If the "tax liability of the partner" *were* calculated solely with reference to the year for which the FPAA was issued, as plaintiff advocates, then there would be no reason for continuing with a case in which the statute of limitations bars an assessment for the year in which the FPAA was issued.  By rejecting that argument in *Grapevine II*, the Court confirmed that a partner's "tax liability" includes his liability for years other than the year for which the FPAA was issued.

By the same token, a partner's "tax liability" for purposes of determining the amount of the jurisdictional deposit must be read to encompass the partner's tax liability for years other than the one adjusted by the FPAA.  Otherwise, a partner would have standing to bring a suit under § 6226 in federal court to challenge an FPAA that would solely affect his tax liability for years other than the year for which the FPAA was issued, without having to make the jurisdictional deposit envisioned by Congress.  Thus, as a corollary to the Court's *Grapevine II* decision, a partner who seeks to challenge an FPAA under § 6226 must deposit the entire amount

---

[4]*See also J&J Fernandez Ventures, L.P. v. United States*, 84 Fed. Cl. 369, 378 (2007) (holding that the IRS is not barred from recalculating partnership items from closed years for purposes of assessing taxes in open years); *Kligfeld Holdings v. Commissioner*, 128 T.C. 192, 201-02 (2007) (holding that the IRS is not barred from issuing an FPAA for a closed year and relying on the FPAA adjustments to recompute a partner's tax liability for an open year).

by which his tax liability – for all affected years – would increase if computed consistently with the FPAA.[5]

Accordingly, because Larson has failed to deposit the full $835,687 by which his tax liability would increase as a result of the FPAA adjustments, the Court lacks subject matter jurisdiction over the complaint.

II.     The Gross Disparity Between the "Deposit" and the Tax Liability Computed with the Adjustments Made by the FPAA Is Indicative of Bad Faith

Section 6226(e)(1) permits a taxpayer to amend his deposit to cure a shortfall if the Court determines that the insufficient deposit was nevertheless a good faith effort to satisfy the jurisdictional requirement.  Larson's deposit is woefully deficient and does not meet the good faith standard.  Larson made a token deposit of only $100, representing a mere .01% of the required amount of $835,687.  He did so knowing that the effect of the FPAA was to disallow $2.6 million of losses he claimed between 1998 and 2001.  And although plaintiff argues that the jurisdictional deposit need only reflect the increased tax liability for the year in which the FPAA adjusted the partnership return, Larson also knew that his $100 deposit did not reflect anything. His deposit was simply a nominal payment, a superficial recognition that there is a requirement to make a jurisdictional deposit, but not an effort to calculate and satisfy it.  Larson's deposit therefore falls far short of a good faith estimate of the amount of the tax liability computed by treating the partnership items consistently with the FPAA.

---

[5]For taxable years for which returns are due after the complaint, there is no return upon which to calculate the effect of the FPAA adjustments as of the date of the complaint, so § 6226(e)(1) does not apply to those years.

**CONCLUSION**

For the reasons stated above, plaintiff's $100 deposit fails to satisfy the jurisdictional deposit requirement of § 6226(e)(1), and the complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,


December 4, 2009                    s/ Karen Servidea
                                   KAREN SERVIDEA
                                   Attorney of Record
                                   U.S. Department of Justice
                                   Tax Division
                                   Court of Federal Claims Section
                                   Post Office Box 26
                                   Ben Franklin Post Office
                                   Washington, D.C. 20044
                                   (202) 616-3423 - telephone
                                   (202) 514-9440 - facsimile
                                   karen.e.servidea@usdoj.gov

                                   JOHN A. DiCICCO
                                       Acting ssistant Attorney General
                                   STEVEN I. FRAHM
                                       Chief, Court of Federal Claims Section

                                   s/ Steven I. Frahm
December 4, 2009                    Of Counsel


- 19 -

**APPENDIX A**

<u>**Internal Revenue Code of 1986 (26 U.S.C.):**</u>

**§ 733. Basis of distributee partner's interest**

In the case of a distribution by a partnership to a partner other than in liquidation of a partner's interest, the adjusted basis to such partner of his interest in the partnership shall be reduced (but not below zero) by–

**(1)** the amount of any money distributed to such partner, and

**(2)** the amount of the basis to such partner of distributed property other than money, as determined under section 732.

**§ 752. Treatment of certain liabilities**

**(a) Increase in partner's liabilities.**--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in partner's liabilities.**--Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

. . . .

**§ 6221. Tax treatment determined at partnership level**

Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

**§ 6226. Judicial review of final partnership administrative adjustments**

    **(a) Petition by tax matters partner.**--Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with–

        **(1)** the Tax Court,

        **(2)** the district court of the United States for the district in which the partnership's principal place of business is located, or

        **(3)** the Court of Federal Claims.

. . . .

    **(e) Jurisdictional requirement for bringing action in district court or Court of Federal Claims.--**

        **(1) In general.**--A readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. In the case of a petition filed by a 5-percent group, the requirement of the preceding sentence shall apply to each member of the group. The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected.

        . . . .

**§ 6230. Additional administrative provisions**

    **(a) Coordination with deficiency proceedings.--**

        **(1) In general.**--Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.

        **(2) Deficiency proceedings to apply in certain cases.--**

            **(A)** Subchapter B shall apply to any deficiency attributable to--

**(i)** affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) . . . .

. . . .

## § 6231. Definitions and special rules

**(a) Definitions.**--For purposes of this subchapter–

. . . .

**(6) Computational adjustment.**--The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

. . . .

## **Treasury Regulations (26 C.F.R.):**

## § 301.6226(e)-1 Jurisdictional requirement for bringing an action in District Court or United States Court of Federal Claims.

**(a) Amount to be deposited--(1) In general.** The jurisdictional amount that the filing partner (or, in the case of a petition filed by a 5-percent group, each member of the group, or, for civil actions beginning on or after April 2, 2002, in the case of a petition filed by a pass-thru partner, each indirect partner holding an interest through the pass-thru partner) shall deposit is the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment. The partner is not required to pay other outstanding liabilities in order to deposit a jurisdictional amount.

. . . .

A-3