No. 05-576 T
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
———————————————

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

———————————————————

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RCFC 12(b)(1)
———————————————————

JOHN A. DiCICCO
  Acting Assistant Attorney General

STEVEN I. FRAHM
KAREN SERVIDEA
  Attorneys
  Justice Department (Tax)
  Court of Federal Claims Section
  P.O. Box 26
  Ben Franklin Post Office
  Washington, D.C.  20044
  (202) 616-3423
  (202) 514-9440 (Fax)

# TABLE OF CONTENTS

**Page(s)**

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 4

I.     The Use of the Singular "Return" Does Not Limit the Deposit Requirement to the Year of the FPAA ............................................................................... 4

II.    The Treasury Regulations Do Not Support Plaintiff's Position ........................... 8

III.   Plaintiff's Interpretation Conflicts with Caselaw Interpreting Other TEFRA Provisions ......................................................................................... 9

IV.   Plaintiff Did Not Make a Good Faith Attempt to Satisfy the Deposit Requirement .......................................................................................... 11

Conclusion .................................................................................................................. 13

Appendix A

1 U.S.C. § 1 ................................................................................................... A-1

Internal Revenue Code (26 U.S.C.) § 7701 ................................................... A-1

Treasury Regulations (26 C.F.R.) § 301.6226(e)-1 ...................................... A-1

Staff of Joint Commission on Taxation, 97th Cong., "Comparative Description of H.R. 6300 and H.R. 5829," (Comm. Print May 12, 1982) ............................................ A-3

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500 (W.D. Tex. 1994) ........ 11

*Bubble Room, Inc. v. United States*, 159 F.3d 553 (Fed. Cir. 1998) ................................. 8

*Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418 (U.S. Tax Ct. 1996) ........................................................................................................................... 10

*Flora v. United States,* 357 U.S. 63 (1958), 362 U.S. 145 (1960) .................................... 7

*Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385 (2008), *reh'g denied*, 84 Fed. Cl. 378 (2008) .............................................................................. 2, 4-5, 8

*Olson v. United States* 37 Fed. Cl. 727 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999) ... 10

*Russian Recovery Fund Ltd. v. United States*, Fed. Cl. 2009 WL 5178373 (2009) ....................................................................................................... 2, 4-5, 8

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ....................................... 8

*SKF USA Inc. v. United States*, 512 F.3d 1326 (Fed. Cir. 2008) ................................... 11

*Tonasket v. United States*, 218 Ct. Cl. 709, 590 F.2d 343 (1978) ................................... 7

**STATUTES**

1 U.S.C. § 1   ................................................................................................... 1, 5-6, 8

26 U.S.C.:

§ 3121 ...................................................................................................................... 8

§ 6225 ................................................................................................................... 10

§ 6226 ............................................................................................................. *passim*

§ 6230 ................................................................................................................... 10

§ 6231 ................................................................................................................... 10

§ 7701 ................................................................................................. 7

28 U.S.C.:

§ 1326 ................................................................................................. 7

§ 1491 ................................................................................................. 7

Treasury Regulations (26 C.F.R.):

§ 301.6226(e)-1 ............................................................................. 8-10

## MISCELLANEOUS

Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction*
(7th ed. 2007) ................................................................................. 5

Staff of Joint Commission on Taxation, 97th Cong., "Comparative Description of H.R.
6300 and H.R. 5829," 40 (Comm. Print May 12, 1982) ............................................. 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-576 T
(Judge Allegra)

_____

PRESTOP HOLDINGS, LLC, JL INVESTMENT TRUST,
JOHN M. LARSON, GRANTOR/TRUSTEE,
TAX MATTERS PARTNER FILING AS NOTICE PARTNER,

**Plaintiff,**

v.

THE UNITED STATES,

**Defendant.**

_____

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RCFC 12(b)(1)
_____

Defendant filed a Motion to Dismiss for lack of subject matter jurisdiction because

plaintiff has failed to make the jurisdictional deposit required by § 6226(e)(1).[1]  Plaintiff filed its

response, and defendant now replies.

## INTRODUCTION

In this suit, plaintiff, the JL Investment Trust, a partner in Prestop Holdings, LLC, seeks

judicial review of a notice of final partnership administrative adjustment ("FPAA") issued by the

IRS for the partnership's 1997 tax year.  Before instituting such a suit, the petitioning partner

_____

[1]Unless otherwise noted, all references to code sections shall refer to the Internal
Revenue Code of 1986, Title 26 of the United States Code, as amended and in effect during the
relevant period.

must pay a deposit equal to the amount by which the FPAA would increase his tax liability.  This

jurisdictional prerequisite is provided for in § 6226(e)(1) :

> A readjustment petition under this section may be filed in a district court of the United
> States or the Court of Federal Claims only if the partner filing the petition deposits with
> the Secretary, on or before the day the petition is filed, the amount by which the tax
> liability of the partner would be increased if the treatment of partnership items on the
> partner's return were made consistent with the treatment of partnership items on the
> partnership return, as adjusted by the final partnership administrative adjustment.

Where, as here, the petitioning partner is a pass-through entity, each indirect partner holding an

interest in the partnership through the petitioning partner is subject to the deposit requirement.

Treas. Reg. (26 C.F.R.) § 301.6226(e)-1.

Here, the FPAA increased the amount of distributions from the partnership to its partners

from zero, as reported by the partnership, to around $6 million, to account for the partnership's

assumption of the obligation to close short sales in U.S. Treasury securities contributed by the

partners in 1997.  If the FPAA adjustments are upheld, they will eliminate a $2.6 million loss

plaintiff claimed in 1998 and carried forward into 2000 and 2001, increasing the tax liability of

John Larson, the grantor of the JL Investment Trust, by approximately $836,000.

Plaintiff deposited only $100, however.  According to plaintiff, the deposit is sufficient,

because the FPAA adjusted the partnership's return for 1997, but Larson did not begin claiming

the tax benefits on the basis of that return  until 1998.  Plaintiff thereby interprets § 6226(e)(1) to

encompass only changes to a partner's tax liability for the year of the FPAA.

This Court has twice rejected that interpretation of § 6226(e)(1).  Instead, this Court has

held that a partner who files a complaint under § 6226 in this Court must deposit the amount by

which the FPAA would increase his tax liability for *all* years that would be affected by the

FPAA.  *Russian Recovery Fund Ltd. v. United States*, ___ Fed. Cl. ___, 2009 WL 5178373, at *7

(2009); *Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385, 390 (2008) ("*Kislev I*"), *reh'g denied*, 84 Fed. Cl. 378 (2008) ("*Kislev II*").  Thus, plaintiff was required to deposit the entire $836,000 by which the FPAA at issue in this case would increase Larson's tax liability.  Because it did not, the Court lacks jurisdiction over the complaint.

In its response, plaintiff defends its construction of § 6226(e)(1) against the weight of authority by pointing (as did the plaintiffs in *Kislev* and *Russian Recovery*) to the use of the singular term "return" in the statutory text and in the corresponding Treasury Regulations.  For the reasons expressed in the earlier decisions plaintiff's reliance on the statutory text and the Treasury Regulations is misplaced.  Certainly after two decisions that soundly rejected plaintiff's very circumscribed view of the jurisdictional deposit requirement, plaintiff did not have a good faith basis for depositing only $100.  Accordingly, under § 6226(e)(1), plaintiff is  not entitled to the opportunity to correct the deposit shortfall, and the Court should dismiss the complaint for want of jurisdiction.

**ARGUMENT**

I.     The Use of the Singular "Return" Does Not Limit the Deposit Requirement to the Year of
       <u>the FPAA</u>

Plaintiff bases its position on a single word in the statutory text.  According to plaintiff,
by using the singular form of "return," rather than "returns," in § 6226(e)(1), Congress intended
to limit the amount of the jurisdictional deposit to the FPAA's effects on the partner's return for
the year of the FPAA.  (Pl's. Resp. at 7.)   The Court correctly rejected that argument in both
*Kislev* and *Russian Recovery Fund*s.  *Kislev I*, 84 Fed. Cl. at 389; *Kislev II*, 84 Fed. Cl. at 382-
83; *Russian Recovery Fund*, 2009 WL 5178373 at *7.

As an initial matter, even if plaintiff were correct in deriving meaning from Congress's
use of the singular, rather than the plural, form of the word "return," plaintiff's proposed
interpretation would not follow from the text of the statute.  At most, the use of the singular
would mean that the deposit is limited to the FPAA's effects on one, rather than many, of the
partner's returns, but it would not dictate *which* one.  Plaintiff simply assumes, without reference
to anything, that it would be "the taxpayer's return for the year of the FPAA that is before the
Court" (Pl.'s Resp. at 4).  But even if we focus on only one return, the statute could be
interpreted to refer to the first return on which the adjustments made by the FPAA actually
would affect the partner's tax liability.  Indeed, doing so would be far more logical than to
conclude, as plaintiff does, that a plaintiff who wishes to challenge an FPAA's determinations
calculates the jurisdictional deposit by reference to a year when the FPAA had no effect on his
taxes.  To arrive at plaintiff's unintuitive construction of the statute, the Court would have to
insert plaintiff's formulation into the text of the statute, as follows:

[a] readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return *for the year of the FPAA that is before the Court* were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment.

*See* § 6226(e)(1).[2]  Thus, even if plaintiff were correct about the significance of Congress's use of the singular form of "return," plaintiff's interpretation would not be based on the plain meaning of the statute, but rather would depend on the insertion of additional language into the statutory text.

Moreover, plaintiff is wrong about the significance of the word "return."  As recognized in both *Kislev* and *Russian Recovery Fund*, under standard principles of statutory interpretation, the term "return" encompasses multiple returns.  *Kislev I*, 84 Fed. Cl. at 389; *Kislev II*, 84 Fed. Cl. at 382-83; *Russian Recovery Fund*, 2009 WL 5178373 at *7.  In their treatise on statutory interpretation, Norman J. Singer and J.D. Shambie Singer explain that words that are in the singular form may apply to multiple subjects if that is the reasonable meaning of the text. Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47:34 (7th ed. 2007).  Indeed, Congress established that principle as a guideline for interpreting all acts of Congress: Section 1 of Title 1 of the United States Code provides that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise, words importing the

---

[2]Moreover, a partner does not always have the same taxable year as the partnership.  For example, what would be "the partner's return for the year of the FPAA that is before the Court" if the partner reports his income on a calendar-year basis but the partnership taxable year adjusted by the FPAA was September 1, 2000, through August 31, 2001?  To alleviate that ambiguity, one would have to insert even more clarifying language into the statute.  Plaintiff simply ignores the difficulties its view of the statute creates.

singular include and apply to several persons, parties, or things."[3]  The Internal Revenue Code in turn adopts the same principle, incorporating it by reference to Section 1 of Title 1 of the United States Code.  § 7701(o)(1)(1).

Thus, the singular term "return" in § 6226(e)(1) must be read to include the plural term "returns" unless the context indicates otherwise – which it does not.  To the contrary, reading the term "return" to include the plural "returns" harmonizes the statute with the general jurisdictional framework that Congress established for cases brought under § 6226.  As explained in our opening brief (Def. Br. at 11-13), in setting up a system of judicial review of partnership-level adjustments by the IRS, Congress distinguished between the jurisdiction of the Tax Court, on the one hand, and the jurisdiction of this Court along with that of the federal district courts, on the other hand.  Whereas a partner can obtain review in the Tax Court before making any payments (*see* § 6226(a)(1), (e)(1)), he can proceed in this Court or a district court only if he first pays the jurisdictional deposit required by § 6226(e)(1).  As explained by the Joint Committee of Taxation, "[a] partner filing in any forum other than the Tax Court must first pay the deficiency resulting from adjustments to his return to reflect the FPAA."  Staff of Joint Comm. on Taxation, 97th Cong., "Comparative Description of H.R. 6300 and H.R. 5829," 40 (Comm. Print May 12, 1982).[4]

The jurisdictional framework established by Congress for suits for the readjustment of partnership items thus parallels that for nonpartnership tax disputes:  To contest a nonpartnership

---

[3]The pertinent portions of authorities cited in this brief that were not set forth in the appendix to our opening brief are set forth in Appendix A, *infra*.

[4]A copy of the relevant excerpts from the Joint Committee Print is attached in Appendix A, *infra*.

tax liability, a taxpayer can file suit in Tax Court without first paying the amount of the disputed

liability, but to contest the liability in this Court or in a federal district court, the taxpayer must

first fully pay the liability. *Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S.

145 (1960) (holding that the grant of tax refund jurisdiction to federal district courts under 28

U.S.C. § 1326(a)(1) is limited to suits where the taxpayer has fully paid all outstanding tax

liabilities for the year in issue); *Tonasket v. United States*, 218 Ct. Cl. 709, 712, 590 F.2d 343

(1978) (Table) (applying the holding of *Flora* to this Court's jurisdictional grant, 28 U.S.C.

§ 1491).

Under plaintiff's interpretation, however, a partner would be able to obtain review of an

FPAA in this Court by paying either no deposit at all, or a nominal deposit such as plaintiff paid

here that bears no relationship at all to the tax consequences to him of the FPAA's adjustments.

It is commonplace for a taxpayer to claim tax benefits from a partnership in a year other than the

year on which the position was reported on the partnership's return.  For example, a partner may

have no use for a tax loss in the year it was reported on the partnership's return, but carryover

provisions may enable him to claim it on his return for a later year.  Plaintiff's position would

thus blur the distinction drawn by Congress between the Tax Court's prepayment jurisdiction

and this Court's post-payment (refund) jurisdiction.  Interpreting the term "return" to include the

plural "returns," in contrast, would avoid that odd result by requiring a petitioning partner to pay

a deposit equal to the potential increase in his tax liability even if that increase would occur in a

year or years other than the year of the FPAA.

Thus, there is no indication in the context of § 6226(e)(1) that Congress specifically

intended the term "return" to refer only to a single return.  Standard principles of statutory

interpretation therefore dictate that the term "return" be read to encompass multiple returns.  *See Kislev I*, 84 Fed. Cl. at 389 ("[T]he term 'return' in § 6226(e)(1) properly encompasses the plural 'returns' and permits the term 'tax liability' to be construed as encompassing multiple returns spanning multiple years"); *Russian Recovery Fund*, 2009 WL 5178373, at *7 (citing 1 U.S.C. § 1 in support of its conclusion that the term "return" in § 6226(e)(1) encompasses multiple returns); *see also SKF USA Inc. v. United States*, 263 F.3d 1369, 1380 n.13 (Fed. Cir. 2001) (relying on the principle that "'words importing the singular include and apply to several persons, parties or things'" in interpreting the term "a foreign like product" as used in the antidumping statutes (quoting 1 U.S.C. § 1)); *Bubble Room, Inc. v. United States*, 159 F.3d 553, 563-64 (Fed. Cir. 1998) (relying on the same principle in interpreting the term "an employee" as used in § 3121 of the Internal Revenue Code).

II.   The Treasury Regulations Do Not Support Plaintiff's Position

For similar reasons, the Treasury Regulations plaintiff cites do not support the limitation it seeks to impose on the deposit requirement.  (*See* Pl.'s Resp. at 4-5.)  The first such Regulation (Treas. Reg. (26 C .F.R.) § 301.6226(e)-1(a)(1)) merely defines the amount of the required deposit in the same words as the statute.  It provides that the petitioning partner must deposit "the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment."  Treas. Reg. (26 C.F.R.) § 301.6226(e)-1(a)(1).  Plaintiff points to the Regulation's use of the singular "return" as further support for the proposition that the deposit requirement is limited to the year of the FPAA.  But, just as with the statute, standard principles of statutory

interpretation dictate that the singular term "return" be read to encompass multiple returns, that is, each "return" that the FPAA would affect.  Thus, the Regulation adds nothing to plaintiff's argument.

Plaintiff additionally cites an example provided by the Treasury Regulations in which the calculation of a petitioning partner's deposit is based on the FPAA's effects on a single return of the partner.  *See* Treas. Reg. (26 C.F.R.) § 301.6226(e)-1(a)(2).  But there is no indication in the example that the FPAA would have increased the partner's tax liability for any year other than the year of the FPAA.  *See id.*  As discussed above, the FPAA can affect one year, or multiple years, including the year of the FPAA, or perhaps only another year or years.  The example thus merely explains how the calculation is to be made for a year the FPAA affects and would guide the calculation in each year so affected.  The Regulations contain no examples in which a petitioning partner is permitted to maintain a suit in this Court without first depositing the full amount by which the FPAA would increase his tax liability.

In sum, neither the statutory text, nor the corresponding Treasury Regulations, supports limiting the amount of the deposit required by § 6226(e)(1) to the increase in the partner's tax liability to the year of the FPAA only.

III.   Plaintiff's Interpretation Conflicts with Caselaw Interpreting Other TEFRA Provisions

Plaintiff's proposed interpretation of § 6226(e)(1) is not only contrary to this Court's precedent directly on point, but, as explained in our opening brief (Def.'s Br. at 13-18) also conflicts with caselaw interpreting other TEFRA provisions – namely, the statute of limitations for assessments based on FPAA adjustments and the definition of "computational adjustments." In its response, plaintiff addresses only the latter provision, contending that TEFRA does not

permit the IRS to make a computational adjustment before the IRS's partnership determinations are found to be correct.  (Pl.'s Resp. at 8.)  As an initial matter, plaintiff is wrong as a matter of law.  Where a partner has filed in the appropriate district court or the Court of Federal Claims, an assessment of a deficiency attributable to any partnership item may be made after 150 days from the issuance of the FPAA.  § 6225(a).  Only where the petition is filed in Tax Court is the assessment of a deficiency stayed pending final decision of that court.  *Id.*

But, more importantly, plaintiff's response misses the relevance of this Court's and the Federal Circuit's prior interpretation of TEFRA's computational adjustment provisions.  The point is not that the IRS can make partner-level assessments while the instant case is pending, but rather that precedent under TEFRA's "computational adjustment" provisions supports interpreting the deposit requirement to encompass years other than the year of the FPAA.  As explained in our opening brief, TEFRA permits the IRS to assess "computational adjustments" without following the standard deficiency procedures.  § 6230(a)(1).  The term "computational adjustment," in turn, is defined as "the change in *the tax liability* of a partner which properly reflects the treatment under this subchapter of a partnership item."  § 6231(a)(6) (emphasis added).  In *Olson v. United States*, this Court held, and the Federal Circuit affirmed, that the IRS may assess amounts as computational adjustments (*i.e.*, without following the Code's deficiency procedures) for years other than the year that was the subject of partnership-level proceedings. 37 Fed. Cl. 727, 732 (1997), *aff'd* 172 F.3d 1311 (Fed. Cir. 1999) (interpreting the term "tax liability" in § 6231(a)(6) to encompass adjustments to *all* of a partner's affected tax years as a result of adjustments made to partnership items in a TEFRA settlement); *see also Cummings v. Commissioner*, T.C. Memo 1996-282, 1996 WL 334418, at *3 (U.S. Tax Ct. 1996) (holding that

net operating loss carryovers to later years are affected items that can be assessed by computational adjustment); *Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500, 512 (W.D. Tex. 1994) (holding that "[d]etermining the amount of a loss carryover or carryback as a result of a settlement agreement relating to partnership items requires only a computational adjustment").

In other words, the Court understood the term "the tax liability of a partner" as encompassing the partner's tax liability for years other than the year as to which there was an adjustment to a partnership item. The jurisdictional deposit requirement is defined using the substantially similar phrase "the tax liability of the partner." *See* § 6226(e)(1) (defining the jurisdictional deposit as "the amount by which *the tax liability of the partner* would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the [FPAA]." § 6226(e)(1) (emphasis added). *Olson* thus supports interpreting that phrase to encompass increases to the petitioning partner's tax liability for all years affected by an FPAA.[5]

IV.   Plaintiff Did Not Make a Good Faith Attempt to Satisfy the Deposit Requirement

Section 6226(e) authorizes this Court to issue an order holding that the jurisdictional requirements for this suit have been met if it finds that "there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected." § 6226(e)(1). Contrary to plaintiff's claim, it did not act in good faith in making a

---

[5]Plaintiff's alternative argument that the Court should apply the *Kislev* Court's interpretation of the deposit requirement prospectively only is similarly without merit. It is well-established that judicial decisions apply retroactively. *SKF USA Inc. v. United States*, 512 F.3d 1326, 1331 (Fed. Cir. 2008).

nominal deposit of $100.  The Court should deny its request to be given an opportunity to cure the extremely large shortfall in its deposit.

First, the amount that plaintiff deposited is not based on plaintiff's supposed interpretation of the statute as only encompassing the year of the FPAA.  The change in plaintiff's tax liability for the year of the FPAA – 1997 – would be zero, but plaintiff deposited $100.  Plaintiff has failed to offer any computation or explanation for the amount that it actually deposited.  It does not correspond, as any interpretation of the statute requires, to *any* computation of increased tax liability resulting from the FPAA adjustments.

Moreover, even if plaintiff had computed the amount of its deposit based on its interpretation of the statute, that interpretation lacked sufficient support to constitute good faith.  As recognized by this Court in *Kislev* and *Russian Recovery Fund*, plaintiff's construction of the deposit requirement contravenes Congress's basic jurisdictional framework in which the Tax Court is the only prepayment forum, lacks support in the statutory text and Treasury Regulations, and is inconsistent with caselaw interpreting other TEFRA provisions.

Finally, plaintiff's position has been rejected twice by this Court.  Whatever merit plaintiff might have believed its position to have had when it filed the complaint in 2005, it could not have held that belief in good faith after this Court issued its *Kislev* and *Russian Recovery Fund* decisions in August of 2008 and December of 2009, respectively.  Plaintiff has been aware of the government's intention to challenge the sufficiency of the deposit in this case at least since February 15, 2008, when defendant represented as much in the parties' joint status report filed that day.  Certainly, good faith would have required plaintiff to cure the shortfall in its deposit by now – more than a year and a half since *Kislev* was decided.

In short, plaintiff filed suit to have this Court review an FPAA that would increase Larson's tax liability by $836,000, and yet, it has made a nominal deposit of only $100, a mere .01% of that sum.  Plaintiff cannot excuse such a meager attempt to comply with the jurisdictional prerequisite for this suit on the basis of its twice rejected arguments that are contrary to both the statutory language and Congress's evident intention.

## CONCLUSION

For the reasons stated above, plaintiff's $100 deposit fails to satisfy the jurisdictional deposit requirement of § 6226(e)(1), and the complaint should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,


March 9, 2010                    s/ Karen Servidea
                                 KAREN SERVIDEA
                                 Attorney of Record
                                 U.S. Department of Justice
                                 Tax Division
                                 Court of Federal Claims Section
                                 Post Office Box 26
                                 Ben Franklin Post Office
                                 Washington, D.C. 20044
                                 (202) 616-3423 - telephone
                                 (202) 514-9440 - facsimile
                                 karen.e.servidea@usdoj.gov

                                 JOHN A. DiCICCO
                                   Acting Assistant Attorney General
                                 STEVEN I. FRAHM
                                   Chief, Court of Federal Claims Section

                                 s/ Steven I. Frahm
March 9, 2010                    Of Counsel


-13-

APPENDIX A

**1 U.S.C. § 1. Words denoting number, gender, and so forth**

In determining the meaning of any Act of Congress, unless the context indicates otherwise–

words importing the singular include and apply to several persons, parties, or things;

words importing the plural include the singular;

. . . .

**Internal Revenue Code of 1986 (26 U.S.C.):**

**§ 7701. Definitions**

. . . .

**(o) Cross references.--**

**(1) Other definitions.--**

For other definitions, see the following sections of Title 1 of the United States Code:

(1) Singular as including plural, section 1.

(2) Plural as including singular, section 1.

. . . .

**Treasury Regulations (26 C.F.R.):**

**§ 301.6226(e)-1 Jurisdictional requirement for bringing an action in District Court or United States Court of Federal Claims.**

**(a) Amount to be deposited--(1) In general.** The jurisdictional amount that the filing partner (or, in the case of a petition filed by a 5-percent group, each member of the group, or, for civil actions beginning on or after April 2, 2002, in the case of a petition filed by a pass-thru partner, each indirect partner holding an interest through the pass-thru partner) shall deposit is the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the notice of final partnership administrative adjustment. The partner is not required to pay other outstanding liabilities in order to deposit a jurisdictional amount.

**(2) Example.** The provisions of paragraph (a)(1) of this section may be illustrated by the following example:

**Example.** A files a petition for readjustment of partnership items in the United States Court of Federal Claims. A's tax liability would be increased by $4,000 if partnership items on A's return were conformed to the partnership return, as adjusted by the notice of final partnership administrative adjustment. A has an unpaid liability of $10,000 attributable to nonpartnership items. A is required to deposit $4,000 in order to satisfy the jurisdictional requirement.

[JOINT COMMITTEE PRINT]

# COMPARATIVE DESCRIPTION

## OF

## H.R. 6300

## (THE TAX COMPLIANCE ACT OF 1982)

### AND

## H.R. 5829

## (THE TAXPAYER COMPLIANCE IMPROVE-
## MENT ACT OF 1982)

SCHEDULED FOR A HEARING BEFORE THE
COMMITTEE ON WAYS AND MEANS
ON MAY 18, 1982

———

PREPARED BY THE STAFF OF THE

JOINT COMMITTEE ON TAXATION



MAY 12, 1982

———

U.S. GOVERNMENT PRINTING OFFICE
93-590 O                    WASHINGTON : 1982                    JCS—13—82

39

*Return filing requirements*

Partnerships would continue to file information returns and notify each partner of that partner's share of partnership income, loss, etc. Partners generally would be required to file returns consistent with the partnership return or notify the IRS of the inconsistency. The IRS would be precluded from adjusting consistently reported items without a partnership proceeding. If a partner notifies the IRS of the inconsistent treatment of an item, the IRS may deal separately with that partner, as under existing law, or start a partnership proceeding. Failure to notify would allow the IRS to automatically assess and collect any tax attributable to the inconsistency.

*Administrative proceeding*

A partnership level administrative proceeding would go through the same process of examination, audit, appeal, settlement, notice of final determination, etc., that generally applies to a tax audit. All partners would be notified by the IRS of the commencement of a partnership administrative proceeding, would be eligible to participate in the proceeding, and would be given notice by the IRS of the final partnership administrative adjustment [FPAA]. Where the partnership return lists more than 100 partners, the IRS would be required to provide notice only to partners with an interest in partnership profits of one percent or greater. A tax matters partner [TMP] would be designated (normally by the general partners, otherwise as prescribed) and would receive notice on behalf of other partners and be required to notify them of the commencement of a proceeding and notice of a FPAA. However, a notice group with an aggregate interest of 5 percent or more in partnership profits may designate a representative in lieu of the TMP to receive notice of a FPAA. The TMP would notify all partners of significant events during the course of an audit, such as conferences, settlement offers, etc.

*Settlements*

The IRS must, upon settlement with any partner, offer consistent settlement terms to all other partners. The TMP may enter into a binding settlement on behalf of non-notice partners who have not formed a notice group, unless the non-notice partner notifies the IRS that the TMP is not authorized to act on his behalf.

*Effect of final partnership administrative adjustment*

The FPAA is binding on all partners (unless they are subject to separate proceedings under other portions of the proposal) if a petition for judicial review is not filed within 150 days. The IRS may thereafter, generally within a period of one year, assess any resulting adjustments to the partners' tax liability.

*Judicial review of FPAA*

Within 90 days after notice of a FPAA, the TMP may file a petition for judicial review. Other partners may not file suit during the 90-day period. Upon expiration of the 90 days, if the TMP does not file a petition, any other partner may file.

Petition may be filed in the Tax Court, the district court for the district in which the partnership has its principal place of business, or the Court of Claims. Only one court acquires jurisdiction and the choice of forum by the TMP always governs. Otherwise, if a petition

40

is filed in the Tax Court, the Tax Court becomes the forum. Otherwise, the earliest filed petition determines whether the forum is the district court or the Court of Claims. A partner filing in any forum other than the Tax Court must first pay the deficiency resulting from adjustments to his return to reflect the FPAA. Other partners, where the forum is not the Tax Court, would be subject to assessment and collection.

*Administrative adjustment requests*

The bill provides for an Administrative Adjustment Request (AAR) to be filed within 3 years of the due date for the partnership return. An AAR functions as does a claim for refund. When it is filed by the TMP, it is filed on behalf of all the partners and the IRS may proceed to allow it and grant refunds or institute a partnership proceeding. Failure by the IRS to act within 6 months would enable the partnership to file suit. Petition could be filed in the Tax Court, the Court of Claims, or the appropriate district court and the scope of judicial review would be limited to disallowed items to which the AAR relates. If an AAR is filed by any other partner, unless the IRS commences a partnership audit, it functions as a claim for refund and the IRS may process it as an ordinary claim for refund. If the IRS disallows the request or fails to act, the items to which the request relates are treated as nonpartnership items and the partner may file a refund suit pursuant to section 7422, as under existing law. No suit based on an AAR may be started after the IRS has mailed notice of the commencement of a partnership proceeding (claims made in an AAR would be part of such proceeding).

*Statute of limitations*

Generally, the period of limitations for assessments attributable to partnership items would be 3 years from the filing of the partnership return, extended by the period during which suit may be filed, by the pendency of court proceedings, and for one year thereafter. The assessment period will not expire with respect to any partner, if the IRS has mailed a timely notice of FPAA, until one year after the IRS is furnished the partner's name and address. For fraud, the period of limitations would be unlimited for partners participating in the fraud and the 3-year period would be 6 years for all other partners. For omissions of 25 percent or more of partnership income, the 3-year period would be extended to 6 years. The limitations period otherwise applicable could be extended by agreement (the TMP would be authorized to enter into an extension agreement on behalf of all partners).

*Other matters*

(1) *Multi-tiered partnerships and pass-through partners.*—Where one partnership (or a trust or subchapter S corporation) holds an interest in another partnership that is the subject of a partnership proceeding, the taxpayer whose liability is affected by the partnership determination is not the immediate partner. If such indirect partners are properly identified and their profits interests disclosed with the partnership return (or thereafter, pursuant to regulation), the IRS will deal with them as the parties in interest for all purposes of the proposals. Otherwise, such indirect partners are bound by any action taken with respect to the pass-through partner.