# In the United States Court of Federal Claims

No. 05-576T

(Filed:  December 7, 2010)
_____

| | | |
|---|---|---|
| PRESTOP HOLDINGS, LLC, | * | Partnership readjustment petition under 26 |
| JL INVESTMENT TRUST, | * | U.S.C. § 6226; Motion to dismiss; |
| JOHN M. LARSON, | * | Parameters of judicial review under 26 |
| GRANTOR/TRUSTEE, TAX MATTERS | * | U.S.C. § 6226; Deposit requirement under |
| PARTNER FILING AS NOTICE | * | 26 U.S.C. § 6226(e)(1); *Kislev* and *Russian* |
| PARTNER, | * | *Recovery* examined – and rejected; Proper |
| | * | application of the Dictionary Act, 1 U.S.C. |
| Petitioner, | * | § 1 – pluralization of statutory terms; *Nat'l* |
| | * | *Bank in St. Louis;* Annual accounting |
| v. | * | principle – *Burnet v. Sanford*; Analogy to |
| | * | *Flora*; Context of section 6226(e)(1) – |
| THE UNITED STATES, | * | including language of accompanying |
| | * | provisions and the structure of TEFRA – |
| Respondent. | * | indicates that deposit thereunder need only |
| | * | account for the partner's taxable year |
| | * | corresponding to the partnership taxable year |
| | * | examined under the FPAA; Motion denied. |

_____

## OPINION
_____

*Theodore H. Merriam,* Merriam Law Firm, P.C., Denver, CO, for petitioner.

*Karen E. Servidea*, Tax Division, United States Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General *John A. DiCicco*, for respondent.

**ALLEGRA, Judge:**

It is the rare statute – even in the world of Federal taxation – that continues to spawn jurisdictional disputes nearly thirty years after its enactment.  But, as many recent cases would attest, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 648, is among that uncommon breed.  Respondent has moved to dismiss this case for lack of jurisdiction under RCFC 12(b)(1), claiming that the partner pursuing this partnership-level action has failed to make an adequate deposit with the Treasury under section 6226(e)(1) of the Internal Revenue Code of 1986 (26 U.S.C.) (the Code).  Following briefing and oral argument, and for the reasons that follow, the court **DENIES** respondent's motion.

## I.

A brief recitation of the facts provides necessary context.[1]

On or about December 10, 1997, Prestop Holdings, LLC (Prestop) was formed as a partnership under Delaware laws.  JL Investment Trust (the Trust), the grantor of which is John M. Larson (Mr. Larson), is one of two partners in the partnership.[2]  On December 22, 1997, the Trust received $3,074,589 from the short sale of U.S. Treasury notes, and transferred the proceeds plus $75,000 in cash – for a total of $3,149,589 – to Prestop to obtain a 50 percent interest in the partnership.  On December 29, 1997, Torpre Inc. (Torpre) was admitted as a new member to Prestop and the Trust assigned its interest in Prestop to Torpre in exchange for stock in Torpre.  On February 6, 1998, the Trust sold its Torpre stock, receiving $215,204 upon the sale and $214,942 in July of 1998.

On or before October 15, 1998, Prestop filed its 1997 tax return, in which it stated that its distribution to partners was zero.  On or before October 15, 1998, Mr. Larson filed his 1997 tax return, Form 1040, and the Trust's 1997 tax return, Form 1041.  Neither return reported any partnership items relating to Prestop.

On October 15, 1999, the Trust filed its 1998 income tax return.  In its return, the Trust claimed a short term capital loss of $2,613,003 from the sale of its stock in Torpre, which was the difference between the sale price of the stock, $536,586, and the stated basis in the stock, $3,149,589.  After accounting for a $460,478 short term gain, the Trust carried over $2,152,525 as a short term capital loss into 1999.[3]  Of that amount, the Trust used $932,488 to offset short term gain reported on its 1999 income tax return, while Mr. Larson used another $3,000 as a deduction from his ordinary income.  This left a $1,217,037 short term capital loss carryover into 2000.  On his 2000 return, Mr. Larson used $34,393 of the short term capital loss carryover from 1998 to offset short term capital gains; $570,158 of the short term capital loss carryover to offset net long term capital gains; and $3,000 of the short term capital loss carryover as a deduction from ordinary income.  This left $609,486 as a short term capital loss carryover available in 2001.  On his 2001 return, Mr. Larson combined $598,456 of the short term capital loss carryover with a net short term loss of $231,940 against $7,202 in short term capital gain and $1,387,791 in long term capital gains, leaving $564,597 in long term capital gain.

---

[1]  These facts are drawn primarily from the petition (complaint) and, for purposes of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[2]  During the years 1997 through 2001, the Trust was a grantor trust.  As such, all of its income was taxable to Mr. Larson, the grantor of the Trust.  *See* 26 U.S.C. §§ 671-78.

[3]  The loss carryover/carryback rules in section 172 of the Code mitigate the requirement that taxable income be calculated and reported  on an annual basis, with no allowance for accrued but unrealized losses.  26 U.S.C. § 172; *see also* 2 Mertens Law of Federal Income Taxation § 12:46 (2010).

On December 27, 2004, the Internal Revenue Service (IRS) issued Prestop a Notice of Final Partnership Administrative Adjustment (the FPAA) for the partnership taxable year ending December 31, 1997. The FPAA adjusted the total amount of distributions to partners from zero, as reported on Prestop's original return for 1997, to $6,149,178, and thus increased the distribution to the Trust by $3,074,589. That adjustment had the effect of decreasing the Trust's basis in Prestop from $3,149,589 to $75,000. The IRS explained that when the Trust transferred its proceeds from the short sale to Prestop, it also transferred the obligation to close open short sales in U.S. Treasury notes equal to $3,074,589. It claimed that this assumption of liability by the partnership decreased the individual liabilities of the partners, including the Trust, which triggered a constructive distribution of cash that should have reduced the partners' bases in Prestop by the amount Prestop assumed in liability.

Pursuant to section 6226(e)(1) of the Code, on May 25, 2005, Mr. Larson, as the grantor of the Trust, a "notice partner" of Prestop, deposited $100 with the Treasury in an effort to satisfy the requirements for challenging the adjustments made by the FPAA to the partnership's 1997 tax return. On May 26, 2005, the Trust, acting through Mr. Larson, filed a petition[4] seeking a readjustment of the partnership items addressed in the FPAA, pursuant to section 6226(b) of the Code, requesting that the court dismiss the FPAA adjustments and refund the aforementioned deposit.[5] On December 8, 2005, the court stayed the proceeding pending the resolution of a related criminal case. On April 8, 2009, after those criminal proceedings concluded, the court lifted the stay.

On December 4, 2009, respondent filed a motion to dismiss the petition for lack of subject matter jurisdiction under RCFC 12(b)(1), asserting that Mr. Larson had failed to make the jurisdictional deposit required by 26 U.S.C. § 6226(e)(1). Respondent argues that the appropriate jurisdictional deposit was the amount that Mr. Larson's total income tax liability, spanning from 1997 until 2001, would increase when the partnership items of Prestop were treated consistent with the adjustments made by the FPAA. According to the IRS, the total

---

[4]   To be sure, the initial pleading was captioned as a "complaint," and the Trust was denominated therein the "complainant." However, section 6226(b) of the Code authorizes only the filing of a "readjustment petition." In observance of this, the court will refer to the complaint as a "petition" and, correspondingly, to the Trust as the "petitioner" and to the United States as the "respondent." Such is the court's practice under the Vaccine Act, 42 U.S.C. §§ 300aa-1 to -34, which also authorizes the filing of a "petition," 42 U.S.C. § 300aa-11(a)(1).

[5]   The Trust filed the petition as a notice partner only even though it is also the Tax Matters Partner (TMP) for the partnership. The TMP is the partner designated to act as a liaison between the partnership and the IRS in administrative proceedings, and as a representative of the partnership in judicial proceedings. *See* 26 U.S.C. §§ 6224(c)(3)(A); 6231(a)(7). A "notice partner" is a partner who is entitled to notice under section 6223(a) of the Code. 26 U.S.C. § 6231(a)(8). When a partnership has less than 100 partners, every partner is a notice partner; if the partnership has 100 or more partners, a notice partner is generally one who owns at least a one percent interest in the partnership. 26 U.S.C. § 6223(b)(1).

adjustment would be $835,687, exclusive of penalties and interest.  As the accompanying chart illustrates, this includes an increase in tax liability in 1998 of $374,708, in 1999 of zero, in 2000 of $334,267, and in 2001 of $126,712.[6]  Respondent further argues that Mr. Larson's $100 deposit was not a good faith effort to satisfy the jurisdictional deposit requirement of 26 U.S.C. § 6226(e)(1).

## II.

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 568.  In particular, petitioner must establish that the court has subject matter jurisdiction over its claims.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Gay v. United States*, 93 Fed. Cl. 681, 684 (2010).  Here, the basic question is whether petitioner has satisfied the preconditions for maintaining this TEFRA partnership case.

## A.

"Although they file information returns under section 701 of the Code, partnerships, as such, are not subject to federal income taxes," but "[i]nstead, under section 702 of the Code, . . . are conduit entities, such that items of partnership income, deductions, credits, and losses are allocated among the partners for inclusion in their respective returns."  *Clearmeadow Invs., LLC v. United States*, 87 Fed. Cl. 509, 518 (2009); *see also United States v. Basye*, 410 U.S. 441, 448 (1973).  In 1982, Congress adopted the current scheme for auditing partnerships in TEFRA. TEFRA "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level."  *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (citing H.R. Rep. No. 97-760, at 599-600 (1982) (Conf. Rep.)). Effectuating this design, section 6221 of the Code generally provides that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."  26 U.S.C. § 6221.  In the case of an audit, the IRS' final determinations take the form of a FPAA, which is generally issued to the TMP, the partner with prime responsibility for

---

[6]  Respondent attached to its motion the affidavit of an IRS revenue officer asserting that the 1997 adjustment would result in the following tax liabilities for Mr. Larson:

| Year | Short term capital loss reported due to sale of Torpre stock | Other capital gains/losses & deductions reported | Carryover losses from sale of Torpre stock | Adjustment pursuant to FPAA |
|------|------|------|------|------|
| 1997 | -- | $1,537 | -- | $0 |
| 1998 | $2,613,003 | $460,478 | $2,152,525 | $374,708 |
| 1999 | $2,152,525 | $935,488 | $1,217,037 | $0 |
| 2000 | $1,217,037 | $607,551 | $609,486 | $334,267 |
| 2001 | $598,456 | $1,163,053 | $0 | $126,712 |

representing the partnership in any audit or resulting tax litigation.  *See* 26 U.S.C. §§ 6223-25; *see also id.* at §§ 6211(c), 6230(a)(1).

Judicial review of the FPAA is provided, *inter alia,* by section 6226 of the Code. Subsection (a) of that section provides that –

> [w]ithin 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with –  (1) the Tax Court, (2) the district court . . . or (3) the Court of Federal Claims.

26 U.S.C. § 6226(a).  On or before the date such a readjustment petition is filed, the partner filing the petition must deposit with the Treasury Department the amount "by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the [FPAA]."  26 U.S.C. § 6226(e)(1) (2000); *see also* Treas. Reg. § 301.6226(e)-1(a)(1).  Under section 6226(f) of the Code, this court has "jurisdiction to determine all partnership items of the partnership for the taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item."  26 U.S.C. § 6226(f); *see also Jade Trading, LLC ex rel. Ervin v. United States*, 598 F.3d 1372, 1378-79 (Fed. Cir. 2010).

The parties disagree as to whether Mr. Larson has made the deposit required by section 6226(e)(1).  Respondent contends that this paragraph requires the partner to make a deposit that accounts for all the gains and losses flowing from the parent partnership, irrespective of whether the losses were received in more than one year.  It relies on two prior decisions of this court: *Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385 (2008), *reh'g denied*, 84 Fed. Cl. 378 (2008), and, more recently, *Russian Recovery Fund, Ltd. v. United States*, 90 Fed. Cl. 698 (2008).  Under this interpretation of the statute, Mr. Larson, with respect to the Trust, would be required to deposit $835,687.  Petitioner's reading of the statute is far different.  It contends that it satisfied the jurisdictional deposit requirement when Mr. Larson deposited the nominal amount of $100 with the Treasury, corresponding to his (the Trust's) tax liability for tax year 1997 – the specific year covered by the FPAA.

## B.

In *Kislev*, Judge Williams held that, to meet the jurisdictional requirements under section 6226(e)(1), a partner must deposit an amount equal to the liability that would result for all affected years, and not just the year for which the FPAA was issued.  *Kislev* involved a limited partnership and a real estate developer which claimed an ordinary loss of approximately $140 million – approximately $6 million of which the partnership listed on its 2002 return and $134 million of which it deferred.  84 Fed. Cl. at 387.  A partner in Kislev subsequently filed individual returns for his 2002 through 2005 tax years, in which he carried forward his share of

the 2002 partnership losses.  *Id.*  Following a partnership-level audit, the IRS issued a FPAA adjusting the partnership items for the partnership's 2002 taxable year and disallowing the $140 million loss.  *Id.*  The partner brought an action in this court challenging the FPAA.  *Id.*  Although his individual tax liability for 2002 was unaffected by the FPAA, the partner deposited $9,500 with the Treasury as a precautionary measure.  *Id.*  The court held that this deposit was inadequate and that the partner was required, by section 6226(e)(1), to deposit instead $2.9 million, corresponding to the amount by which his tax liabilities for 2003 through 2005 would increase if he adjusted the liabilities in those years to reflect the adjustment made by the FPAA for 2002.  *Id.* at 389.  In so concluding, the court reasoned that "tax liability is typically calculated on a multi-year basis" and that the "overarching statutory requirement [of section 6226(e)(1)] is that the total 'tax liability' be deposited as a jurisdictional prerequisite to maintaining suit in this forum."  *Id.* at 388.  By way of further reasoning, the court relied upon 1 U.S.C. § 1, which states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise, words importing the singular include and apply to several persons, parties, or things."  *Id.*  Finding that the word "return" in the statute should thereby be construed to mean "returns," the court held that "'tax liability' for the purposes of section 6226(e)(1)'s jurisdictional deposit should be calculated over multiple years, . . ."  *Kislev*, 84 Fed. Cl. at 389; *see also Kislev*, 84 Fed. Cl. at 381 (reiterating this analysis in denying a motion for reconsideration).

The following year, in another case involving section 6226(e)(1), Judge Bruggink came to a similar conclusion on analogous facts in *Russian Recovery*.  Adopting the reasoning in *Kislev*, the court in *Russian Recovery* stated –

> we agree with *Kislev* and the defendant that the total tax liability depository requirement trumps the singular "return."  *Kislev*, 84 Fed. Cl. at 388.  Moreover, a voluntary election to defer losses to subsequent years should not control the deposit amount.  Allowing an entity to do so would permit it to assure itself of a deposit-free chance to litigate by allocating the loss entirely to other years.

*Russian Recovery*, 90 Fed. Cl. at 706.  "In sum," the court concluded, "to invoke this court's jurisdiction under Section 6226(e)(1), when a pass-thru partner files a readjustment petition, the indirect partners of the pass-thru entity must include their increased tax liability for all years and amounts by which their individual returns are affected by the FPAA."  *Id.* at 706.

With all due respect to the distinguished jurists who penned these opinions, both *Kislev* and *Russian Recovery* are mistaken in requiring a partner to pay the total, multi-year tax liability associated with the adjustment made in a FPAA as a precondition to challenging that adjustment.  As will be seen, that conclusion fails to give proper account to the statutory language of section 6226, the structure of the TEFRA provisions, and, to the extent relevant, the legislative history of TEFRA.  The court will consider these points *seriatim*.

## C.

As with any issue involving a question of statutory construction, "the starting point . . . here must be the language and structure of the relevant statute[ ]." *FleetBoston Fin. Corp. v. United States*, 68 Fed. Cl. 177, 179 (2005), *aff'd*, 483 F.3d 1345 (Fed. Cir. 2007); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Trans-Lux Corp. v. United States*, 696 F.2d 963, 966 (Fed. Cir. 1982). Both *Kislev* and *Russian Recovery* recognized that section 6226(e)(1) speaks in singular terms, that is to say, it requires that the partner pay the amount by which its tax liability would be increased if the treatment of partnership items on the partner's "return" were made consistent with the treatment of partnership items on the partnership "return" adjusted by the FPAA. Yet, in holding that a partner had to pay an amount corresponding to all its liabilities in future years stemming from the adjustment of the partnership return made by the FPAA, both decisions pluralized the reference to the partner's "return" in section 6226(e)(1) – thereby reading the statute as requiring the partner filing the petition to deposit the amount "by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return**s** were made consistent with the treatment of partnership items on the partnership return, as adjusted by the [FPAA]." 26 U.S.C. § 6226(e)(1) (2000) (emphasis added).

As authority for this statutory rewrite, *Kislev* and *Russian Recovery* both relied heavily upon the Dictionary Act, 1 U.S.C. § 1. That statute allows singular nouns to be read as plurals unless – and this proves an important caveat – "the context indicates otherwise." In construing the latter proviso, the Supreme Court has stated that "context" means "the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 199 (1993); *see also United States v. Vargas*, 393 F.3d 172, 174 (D.C. Cir. 2004) ("context" includes the structure and purpose of the statute).[7] Reading the limitation in this proviso broadly, the Supreme Court has held that a party seeking to pluralize a statutory term must affirmatively demonstrate that the modification is required to effectuate Congress' will. As it recently reiterated, the Court has been hesitant to invoke this statute except on the "rare occasions" where "doing so [is] 'necessary to carry out the evident intent of the statute.'" *United States v. Hayes*, 129 S. Ct. 1079, 1085 (2009) (quoting *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 657 (1924)).[8] And in describing when a statute's

---

[7] The Second Circuit, in *Toy Mfrs. of Am., Inc. v. Consumer Prod. Safety Comm.*, 630 F.2d 70, 74 (2d Cir. 1980), held that "context," for this purpose, includes the statute's legislative history. The Supreme Court, however, rejected this interpretation of the statute in *Rowland*, noting that "[i]f Congress had meant to point further afield, as to legislative history, for example, it would have been natural to use a more spacious phrase, like 'evidence of congressional intent,' in place of 'context.'" *Rowland*, 506 U.S. at 200; *see also Hubbard v. United States*, 514 U.S. 695, 701 (1995); *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1081 (Fed. Cir. 2001).

[8] Numerous cases have echoed this rule in rejecting the application of the Dictionary Act. *See Taylor v. Acxiom Corp.,* 612 F.3d 325, 336 (5th Cir. 2010) ("It seems well established, however, that this particular cannon is rarely applied and only when doing so necessarily carries

context "indicates" that the Dictionary Act ought not apply, the Court has said that neither "syllogistic force," "an express contrary definition," nor "inanity" are required. *Rowland*, 506 U.S. at 200-01; *see also Adams v. United States*, 420 F.3d 1049, 1052-53 (9th Cir. 2005).

There is more, then, to applying the Dictionary Act than the *in vacuo* sprinkling, here and there in a statutory text, of the nineteenth letter of the English alphabet. Like other linguistic "variants," such pluralizations are "creature[s] not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see also Textron Lycoming Reciprocating Engine Div. v. United Auto. Workers*, 523 U.S. 653, 657 (1998). While the unvarnished statutory reference to a "return" in the singular thus might be read to allow for the possibility of multiple returns, the question, rather, is whether that pluralization furthers Congress' intent in enacting TEFRA generally, and section 6226(e) particularly? Both *Kislev* and *Russian Recovery* answer this question affirmatively, but do so on the slimmest of reeds, at least insofar as a review of the surrounding language and purpose of TEFRA is concerned. A closer examination, in fact, reveals some persuasive reasons to conclude that, insofar as pluralizing the deposit requirement in section 6226(e)(1) goes, the "context [of the statute] indicates otherwise."

## 1.

The court turns first to the other subsections in section 6226. Thus, section 6226(a) indicates that within ninety days of receiving a FPAA as to a partnership taxable year, the TMP may file a petition for a readjustment of the partnership items "for such taxable year." 26 U.S.C. § 6226(a). Likewise, section 6226(b) indicates that if the TMP does not file such a petition, certain partners may then file a petition for readjustment of the partnership items "for the taxable year involved." 26 U.S.C. § 6226(b). Of course, it requires little creativity to pluralize these references, as well. But, that is not so easy to do in section 6226(f), which defines the scope of a FPAA judicial review. That subsection states that "[a] court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates . . . ." 26 U.S.C. § 6226(f). This provision thus not only refers to a single "partnership taxable year," but also emphasizes that the "year" in question is that "to which the final partnership administrative adjustment relates." While, as an editorial matter, one

---

out the evident intent of Congress.") (citing *Hayes*, 129 S. Ct. at 1085 n.5); *Universal Church v. Geltzner*, 463 F.3d 218, 223 (2d Cir. 2006) (refusing to rely on the rule quoting *First Nat'l Bank*); *Reid v. Angelone*, 369 F.3d 363, 369 n.2 (4th Cir. 2004) (same); *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1341 (Fed. Cir. 2004) (holding that context precluded singular term from embracing the plural). Regarding this provision, one well-known commentator has summarized the law thusly – "[t]he principle does not require that singular and plural word forms have interchangeable effect, and discrete applications are favored except where the contrary intent or reasonable understanding is affirmatively indicated." 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 47:34 (7th ed. 2010).

could add an "s" to the word "year" in this provision, that approach makes no sense if, as is the case here, the FPAA relates only to a single year, *i.e.*, that ending December 31, 1997.[9] Moreover, while section 6226(b) provides detailed priority rules describing how to proceed if more than one TEFRA petition is filed for a particular partnership taxable year,[10] it is wholly silent as to what to do if more than one TEFRA petition is filed as to a particular partnership item – an omission that makes no sense if Congress truly thought that the review of a single FPAA would encompass all the partners' liabilities for all the taxable years affected by the partnership adjustment.

The notion, indeed, that the deposit requirement covers multiple tax years might make more sense if TEFRA anticipated that a single FPAA would address a given partnership item arising in multiple partnership taxable years. But, it does not. Instead, a number of TEFRA provisions seem to anticipate that multiple FPAAs will be issued for a given partnership item, with each corresponding to a taxable year. That view, for example, is reflected in section 6223(c) of the Code, which indicates that the Secretary "shall use the names, addresses, and profits interest shown on the partnership return" in determining which partners are entitled to receive a copy of the FPAA. That notice requirement, of course, would not work if a single FPAA was designed to address the liabilities of partners whose contact information and partnership interests changed from partnership return to partnership return. Another clue to Congress' intentions may be found in section 6223(f) of the Code, which generally prevents the Secretary from mailing more than one FPAA "for a partnership taxable year with respect to partner." Again, if a FPAA was expected to cover a particular adjustment over multiple partnership years, one would expect that Congress would have enacted a provision preventing the Secretary from issuing more than one FPAA covering that same adjustment. But, it did not. Given these provisions, it should come as little surprise that the Internal Revenue Manual likewise proceeds from the notion that FPAAs will be issued on year-by-year basis, instructing the IRS appeals officers responsible for preparing FPAAs to "[p]repare a separate FPAA . . . for each unagreed year." I.R.M. 8.19.3.10.1 (2010).[11]

---

[9] Notably, the FPAA here gives no hint that a partner seeking to challenge its adjustments would be required to deposit an amount reflecting the impact of the adjustments on multiple tax years. Instead, it states that "the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership item on the partner's return were made consistent with the treatment of partnership items under the FPAA."

[10] Section 6226(b)(2) of the Code states that "[i]f more than 1 action is brought [by a partner other than a TMP] with respect to any partnership for any partnership taxable year, the first such action brought in the Tax Court shall go forward." 26 U.S.C. § 6226(b)(2). Section 6226(b)(3) also provides that "[i]f more than 1 action is brought [by a partner other than a TMP] with respect to any partnership for any taxable year, but no such action is brought in the Tax Court, the first such action brought shall go forward." 26 U.S.C. § 6626(b)(3).

[11] While the IRS Manual does not have the force of law, *see Anderson v. United States*, 44 F.3d 795, 799 (9th Cir. 1995); *Koby v. United States*, 47 Fed. Cl. 99, 103 n.3 (2000), its interpretation of the TEFRA provisions, if nothing else, further contradicts the notion that a single FPAA is intended to govern the treatment of a partnership item for all the affected years.

This focus on individual partnership taxable years – and the syntax to match – continues through a host of other TEFRA provisions.  It can be seen as a background principle in the provisions defining who can challenge an adjustment.  Among the partners so authorized is the TMP, *see* 26 U.S.C. § 6226(a), defined by section 6231(a)(7)(B) of the Code as the "general partner having the largest profit interest in the partnership ***at the close of the taxable year involved***."  26 U.S.C. § 6231(a)(7)(B) (emphasis added).  And if the TMP does not act within the prescribed period, then "a 5-percent group" may act – which group of partners is also defined in terms of profit interests existing "for the partnership taxable year involved."  *See* 26 U.S.C. § 6231(a)(11); *see also* 26 U.S.C. §§ 6223(b), 6226(b).  Of course, since profit interests have a way of changing over time, it is difficult to see how these criteria can be stably applied if the FPAA was viewed as impacting multiple partnership years.[12]  The same technical and practical focus on individual taxable years is also evident in provisions dealing with the settlement of partnership proceedings,[13] the period of limitations for making assessments as to partnership items, and the amount of such assessments.[14]  All these provisions are framed in singular terms

---

For examples of the many cases in which multiple FPAAs were issued, *see Va. Historic Tax Credit Fund 2001, L.P. v. Comm'r of Internal Revenue*, 98 T.C.M. (CCH) 630 (2009) (six FPAAs issued to three partnerships for two different years); *Cummings v. Comm'r of Internal Revenue*, 71 T.C.M. (CCH) 3193 (1996) (three FPAAs issued to single partnership, one per year for three taxable years).

   [12]  Regarding these requirements, the Conference Committee report stated –

   The profit interest of any partner shall be determined as of the close of the partnership taxable year. . . .  This determination is significant in determining whether a partner's interest is one percent or more (in partnerships with over 100 partners) and in determining whether a notice group qualifies under the 5-percent requirement.

H.R. Rep. 97-760, at 610.

   [13]  Section 6224(c) of the Code contains rules for settling TEFRA partnership proceedings.  One of these, section 6224(c)(3), generally authorizes the TMP to enter into a settlement on behalf of, and binding upon, less-than-one-percent-profits partners in partnerships with over 100 partners who are not entitled to notice of the FPAA under section 6223.  26 U.S.C. § 6224(c)(3); *see also Duffie v. United States*, 600 F.3d 362, 367 (5th Cir. 2010); *Energy Res. Ltd. v. Comm'r of Internal Revenue*, 91 T.C. 913, 915-16 (1988).  Again, this provision would be virtually impossible to apply if the FPAA were viewed as applying to every partnership taxable year in which a particular partnership item was present.

   [14]  Section 6225 of the Code provides various limitations on assessment and collection.  Section 6225(a) provides that no assessment of a deficiency attributable to any partnership item may be made against an individual partner before –

that specifically reference – and rely upon information involving – the particular partnership taxable year that is the subject of the FPAA.[15]

That said, the best indication why the deposit requirement of section 6226(e) should not be construed to sweep in multiple tax years comes from the other judicial review provision in TEFRA, section 6228 of the Code.  This section comes into play where a partnership files its return and then a partner, prior to the time a FPAA is issued, seeks the readjustment of a partnership item.[16]  In this regard, section 6227(a) of the Code provides that –

(1)  the close of the 150th day after the day on which [the FPAA] was mailed to the [TMP]; and
(2)  if a proceeding is begun in the Tax Court under section 6226 during such 150-day period, the decision of the court in such proceeding has become final.

26 U.S.C. § 6225(a).  This provision is patterned after the provisions applicable to notices of deficiency in section 6213(a) of the Code.  26 U.S.C. § 6213(a).  And like the latter provision, section 6225(a) does not envision that the issuance of a single FPAA authorizes the Secretary to assess deficiencies in multiple tax years.

Section 6225(c) further states that –

If no proceeding under section 6226 is begun with respect to any final partnership administrative adjustment during the 150-day period described in subsection (a), the deficiency assessed against any partner with respect to the partnership items to which such adjustment relates shall not exceed the amount determined in accordance with such adjustment.

26 U.S.C. § 6225(c).  Regarding this provision, the legislative history of TEFRA states that if no Tax Court petition is filed, "the Secretary may assess any deficiency of the depositing partner resulting from the FPAA and apply such deficiency against the deposited amount."  H.R. Rep. 97-760, at 604 (1982).  Again, it is hard to see how this provision would apply to multiple deficiencies.

[15]   The relevant Treasury Regulations also suggest that the TEFRA provisions are applied on a year-by-year basis.  *See*, *e.g.*, Treas. Reg. §§ 301.6223(b)-1(b)(5) (indicating that partners may request copies of FPAAs be sent "for more than one partnership taxable year" only if the standing requirement is "satisfied for each year to which the request relates"); 301.6223(e)-2(b)-(c) (providing for various elections to be made).

[16]   As this provision reflects, TEFRA partnership suits, like tax refund suits more generally, come in two varieties.   In the first (governed by section 6226), the IRS audits a partnership return, the IRS issues a FPAA, a partner makes the requisite deposit and then files suit.  In the second (governed by section 6228), there is no audit, a partner instead files a RAA and, if it is denied, files suit.

[a] partner may file a request for an administrative adjustment of partnership items for any partnership taxable year at any time which is –

    (1)  within 3 years after the later of –

        (A)  the date on which the partnership return for such year is filed, or
        (B) the last day for filing the partnership return for such year (determined without regard to extensions), and

    (2)  before the mailing to the tax matters partner of a notice of final partnership administrative adjustment with respect to such taxable year.

26 U.S.C. § 6227(a).  The quoted language makes clear that the request for administrative adjustment (RAA) is targeted on a specific partnership taxable year – the three-year limitations provision in section 6227(a)(1), indeed, would not work if the references to "return" and "year" therein were pluralized.[17]

If a RAA is denied by the IRS, section 6228 authorizes the TMP to file a petition seeking the adjustment in the same fora listed in section 6226 (*i.e.*, the Tax Court, the district courts, or the Court of Federal Claims).  And section 6228(a)(5) contains a provision describing the scope of judicial review that is very similar to that in section 6226(f).[18]  Yet, nothing in section 6228 requires the TMP or any other partner to pay, as a precursor to filing suit, any outstanding liabilities for other taxable years associated with the partnership item to be adjusted.  Accordingly, treating section 6226(e) as requiring the full payment of such liabilities, as *Kislev* and *Russian Recovery* do, creates a major inconsistency between the two "refund" provisions in

_____

[17]  It should be noted that respondent's interpretation of section 6226 creates several problems with the RAA provisions.  Among other things, under section 6227(a)(2), adoption of its view seemingly would prevent partners from filing a RAA as to ***any*** partnership taxable year if the IRS mailed a FPAA to the TMP for ***one*** partnership taxable year.

[18]  Thus, this paragraph provides –

Except in the case described in subparagraph (B) of paragraph (3), a court with which a petition is filed in accordance with this subsection shall have jurisdiction to determine only those partnership items to which the part of the request under section 6227 not allowed by the Secretary relates and those items with respect to which the Secretary asserts adjustments as offsets to the adjustments requested by the tax matters partner.

26 U.S.C. § 6228(a)(5).  Notably, TEFRA includes rules for converting items that are the subject of an action under section 6228 into nonpartnership items – and these rules speak, as well, only in terms of the "partnership taxable year" that is the subject of the RAA suit.  26 U.S.C. § 6231(b)(1)(B).

TEFRA – one that Congress plainly could not have intended.  *See* H.R. Rep. 97-760, at 605 ("The court's decision [under a RAA review] has the same effect, and is reviewable in the same manner as, a court decision reviewing a FPAA.").[19]

In fact, construing section 6226(e) to sweep in all of a partner's liabilities associated with a particular partnership item, over multiple taxable years, not only would disrupt the operation of the aforementioned provisions (and likely lead to unintended consequences), but raises a host of thorny questions for which there are no obvious solutions.  What does one do, under this interpretation, if the tax liability associated with the partnership item challenged in the FPAA runs not over a few years, but over a decade or so?  Do each of those years have to be "audited" to determine the correct adjusted tax liability that must be deposited?[20]  What if some of those tax years are closed (*i.e.*, the period for assessments has run), as might be the case if several years elapse between the transaction in question and the time the partnership is audited?  What if, on the other hand, the period supposedly impacted by the FPAA includes taxable years that have not yet occurred?  This easily could happen given the relatively short period a partner has to petition for a readjustment as compared to the relatively long period in which a given item might

_____

[19]  The following example serves to illustrate the mischief that could be wrought by this incongruency.  Suppose that the partners of a partnership anticipate that the IRS will challenge their treatment of a particular transaction that occurs in a particular partnership taxable year – a transaction that will have tax impacts for a number of succeeding years.  Suppose further that the partners intend to challenge the IRS in court.  Under TEFRA, they have two choices.  They can report the transaction in the first partnership taxable year in the fashion that they believe represents its proper tax treatment, wait for the IRS to audit the transaction and issue a FPAA, and then, in response, file a petition for readjustment under section 6226.  Or they can report the transaction in the first partnership taxable year in the fashion that they believe represents the IRS' view of the world, immediately file a RAA, and, when it is denied, file suit under section 6228.  If *Kislev* and *Russian Recovery* are right, the partners in the first instance are required, as a precondition to filing suit under section 6226, to pay the tax liability associated with all the taxable years in which the item has impact, while those in the second instance are permitted to proceed under section 6228 without having to pay the aggregated liability.  Logic suggests that Congress could not have intended to place such dramatically different demands on a partner's ability to invoke the judicial review provisions of sections 6226 and 6228.

[20]  It is notable in this regard that respondent's claim as to the proper amount of the deposit is founded not upon the FPAA, nor some other formal IRS notice, but rather upon an affidavit filed by an IRS revenue officer – a document to which no presumption of correctness attaches.  *Cf. Zuhone v. Comm'r of Internal Revenue,* 883 F.2d 1317, 1323 (7th Cir. 1989) (notice of deficiency "presumptively correct").  One can only imagine the Sisyphean complexities involved in calculating the deposit "owed" over many years by a partner that in turn was a pass-through entity (Treasury Regulations hold that in such an instance the deposit amount correlates to what is owed by the partners of the pass-through entity, *see* Treas. Reg. § 301.6226(e)-1(a)(1)) or by multiple partners in a "5-percent group."  If a dispute broke out over those liability figures, the court likely would spend more time determining the appropriate deposit amount than resolving the merits of the case.

impact a partner's individual returns.[21]  How does one calculate the tax liability for such future years – does one make sibylline assumptions regarding future income levels (which might affect the utilization of losses), deductions limitations, the applicability of the minimum tax, or marginal rates?[22]  And what if a partner transfers its partnership interest to a third party in the midst of this supposed liability stream?  Do both partners have to pay jointly the collective liability associated with their returns for the multiple tax years impacted by the FPAA?  All of these fractal complications – and more – arise if one pluralizes the key words in section 6226(e) so as to accumulate the amount that must be deposited to challenge the FPAA – hardly the result one would expect for a statute intended to "promote . . . [the] more efficient administration of the tax laws."  H. R. Rep. 97-760, at 600; *see also Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 333 n.12 (2006).  Yet, all these untoward consequences are substantially minimized or entirely avoided if the liability that must be paid is only the taxable year directly associated with the partnership taxable year covered by the FPAA under review.  Surely, this "context" must be considered too in determining whether pluralization of the critical terms in section 6226(e) is warranted *vel non*.

2.

*Kislev* and *Russian Recovery* fail to account for problems like these, and instead premise their shared holding on the claim that "tax liability is typically calculated on a multi-year basis." *Kislev*, 84 Fed. Cl. at 389.  That venturous claim unfortunately turns out to be wrong – at least if eighty years of precedent has anything to say on the matter.

The Supreme Court long ago held to the contrary, most famously in its landmark decision in *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 365 (1931).  The taxpayer in that case incurred expenses in one tax year and received payment in another.  Rejecting the taxpayer's attempt to employ a transactional accounting approach that would calculate its income tax on a multi-year basis, Mr. Justice Stone, writing on behalf of a unanimous Supreme Court, instead reaffirmed the so-called "annual accounting concept," under which income tax liability is not calculated on a multi-year basis, but rather on the basis of receipts and outlays in a single taxable year.  *Id.* at 364-65.  The Court held that the annual accounting system was the only practical way "to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation."  *Id.* at 365.  By way of further explanation, it stated –

---

[21]  *Compare* 26 U.S.C. §§ 6226(a)-(b) (allowing a petition for readjustment to be filed within 90 to 150 days after the mailing of the FPAA) *with* 26 U.S.C. § 172(b)(1)(A)(ii) (allowing a "net operating loss carryover to each of the 20 taxable years following the taxable year of the loss").

[22]  In its opening brief, respondent gambols around these issues, stating that "[f]or taxable years for which returns are due after the complaint, there is no return upon which to calculate the effect of the FPAA adjustments as of the date of the complaint, so § 6226(e)(1) does not apply to those years."  Of course, under this view, the longer it takes the IRS to audit the partnership and issue the FPAA, the more partners are required to deposit to challenge the IRS' adjustments – a total *non sequitur*.

A taxpayer may be in receipt of net income in one year and not in another. The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or a loss.

*Id.* at 364-65. The annual accounting principle established in *Burnet* is an "integral part of the tax code," *United States v. Skelly Oil Co.*, 394 U.S. 678, 681 (1969), and has been long and often reaffirmed.[23] Indeed, one scarcely can imagine a principle of Federal income taxation more firmly established.[24]

It is thus far too late in the day for anyone to assert that Federal income tax liability is calculated on a multi-year basis.[25] The latter assertion thus can bear no weight as providing a contextual basis for invoking the Dictionary Act here.[26]

---

[23] *See, e.g., Hillsboro Nat'l Bank v. Comm'r of Internal Revenue*, 460 U.S. 370, 388-89 & 409 n.12 (1983) (noting that the Court's adoption of this principle in *Burnet* was "unanimous and unflinching"); *Skelly Oil Co.*, 394 U.S. at 685 ("Under the annual accounting system dictated by the Code, each year's tax must be definitively calculable at the end of the tax year."); *Healy v. Comm'r of Internal Revenue*, 345 U.S. 278, 281 (1953) ("One of the basic aspects of the federal income tax is that there be an annual accounting of income."); *United States v. Lewis*, 340 U.S. 590, 592 (1951) ("Income taxes must be paid on income received (or accrued) during an annual accounting period."); *Reo Motors, Inc. v. Comm'r of Internal Revenue*, 338 U.S. 442 (1950); (stating that the amount of gross income and deductions for a particular tax year depends on the tax statutes in effect during that year); *Heiner v. Mellon*, 304 U.S. 271, 275 (1938) ("The federal income tax system is based on an annual accounting." (citing *Burnet*, 282 U.S. 359)).

[24] Over time, this annual concept has been explicitly incorporated into a number of Code provisions, principal among them, section 441 of the Code, which provides that "[t]axable income shall be computed on the basis of the taxpayer's taxable year." 26 U.S.C. § 441. The impact of this principle also provides the background for several provisions of the Code that are designed to ameliorate its sometimes harsh impacts. *See* 26 U.S.C. §§ 1311-14; 1341; *see also Schortmann v. United States*, 92 Fed. Cl. 154, 155 (2010) (describing the relationship between these provisions and the annual accounting principle).

[25] It is conceivable that, in stating that tax liability is typically calculated on a multi-year basis, *Kislev* meant to refer not to the procedures established by the Code, but rather to the IRS' practice of examining more than one taxable year when it conducts certain types of audits. It hardly can be, however, that the pluralization of a provision enacted by Congress (particularly, one authorizing judicial review) rises or falls based upon what the IRS' current audit practices are, let alone what they were in 1982, when TEFRA passed.

[26] Contrary to the analysis in *Kislev*, 84 Fed. Cl. at 389, it is irrelevant that the adjustment of a partnership item for one partnership taxable year can lead to computational

**3.**

Then, there is the legislative history of TEFRA.  While the Supreme Court, in *Rowland*, made clear that such history does not provide "context" for applying the Dictionary Act, it is worth noting that the history here, such as it is, does not support pluralization of the terms at issue.[27]  For one thing, despite extensive discussions of the relevant provisions in congeries of reports, floor statements, Committee prints and hearings, there is not the slightest hint anywhere in the legislative history – none – that Congress intended that a partner be required to deposit anything more that the amount that he would be obliged to pay if its return were made consistent with the partnership return directly adjusted by the FPAA.  Rather, each and every reference to "liability" and "return" in the legislative history is in the singular, providing no indication whatsoever that Congress intended the liability to be covered by a deposit to be aggregated over all the years affected by a particular adjustment.  *See* H.R. Rep. 97-760, at 599-04.[28]  Like the

---

adjustments being made in the partner's later taxable years under section 6230 of the Code.  That result, of course, is at the heart of the TEFRA model, which envisions the unified resolution of the tax treatment of partnership items at the partnership level, to be followed by corresponding adjustments to the partners' returns.  But, that is a far cry from saying that when a partner wishes to challenge the tax treatment of an item at the partnership level, it must make a deposit under section 6226(e)(1) that corresponds to the multi-year impact of the resolution of that item, potentially far into the future.  Indeed, it appears that notices of computational adjustments, as well as refund suit challenges thereto, are done on a year-by-year basis.  *See* 26 U.S.C. §§ 6230(a), 6230(c)(2)-(3); *see also* I.R.M. 8.19.1.6.9.7(3).  In contending otherwise, *Kislev* cites *Olson v. United States*, 37 Fed. Cl. 727 (1997), *aff'd*, 172 F.3d 1311 (Fed. Cir. 1999), and *Grapevine Imports*, 77 Fed. Cl. at 513.  But neither case remotely supports the notion that the concept of "tax liability," for TEFRA deposit purposes, spans multiple years.  *Per contra*.  *Olson* involved the interpretation of a settlement agreement and its impact on whether the IRS needed to issue a notice of deficiency before making a computational adjustment, 37 Fed. Cl. at 731, and is wholly inapposite.  *Grapevine* (authored by the undersigned) dealt with the timeliness of an assessment made against partners based upon an earlier FPAA and emphasized that the resolution of that issue was determined on a year-by-year basis.  77 Fed. Cl. at 513.

[27]  While this legislative history cannot be considered in determining the "context" surrounding section 6226(e)(1), for purposes of applying the Dictionary Act, it seemingly still holds some value in confirming Congress' intent in passing the statute.  *See Wanless v. Shinseki*, 618 F.3d 1333, 1337 (Fed. Cir. 2010) ("While we do not find the statute ambiguous, we take comfort in knowing that the legislative history also supports our conclusion.").

[28]  As to the deposit requirement, the Conference Committee Report thus states –

As a condition to filing a petition in either the appropriate district court or the Claims Court, the partner filing the petition (including each member of a 5-percent group which files a petition) must deposit with the Secretary the amount

statutory language, the legislative history thus provides no inkling that Congress intended to limit review of FPAAs in this court and the district courts by imposing a multi-year deposit requirement.  This silence provides further evidence – albeit in the negative – that Congress meant what it said when, in section 6226(e)(1) it used the singular word "return."

That said, this history is perhaps more elucidating in reflecting Congress' overarching intent that the new partnership level proceedings be roughly patterned after the tax audit and refund procedures generally applicable to other taxpayers.  *See* H.R. Rep. 97-760, at 604 (analogizing the RAA to a "claim for refund"); J. Comm. Print, at 39 ("A partnership level proceeding would go through the same process of examination, audit, appeal, settlement, notice of final determination, etc., that generally applies to a tax audit.").[29]  This analogy proves telling because, under those normal procedures, a taxpayer would never be called upon to make a deposit of the sort that respondent (and the courts in *Kislev* and *Russian* Recovery) would require here.

In terms of this refund analogy, the TEFRA deposit requirement plays a role similar to the "full payment" rule required by *Flora v. United States*, 362 U.S. 145 (1960).  In *Flora*, the

---

by which such partner's tax liability would be increased if treatment of partnership items on the partner's return were made consistent with the partnership's return as adjusted by the FPAA.

H. R. Rep. 97-760 at 603; *see also* H.R. 6300: A Bill to Improve Compliance with the Internal Revenue Laws, 97th Cong. 17-19, 39, 82-83 (1982) (statements of Hon. Egger, Comm'r, IRS, and Hon. Chapoton, Ass't Sec., U.S. Dept. of Treasury); Staff of J. Comm. on Taxation, 97th Cong., Summary of the Revenue Provisions of H.R. 4961 (The Tax Equity & Fiscal Responsibility Act of 1982) 59-61 (Comm. Print 1982) ("A partner filing in any forum other than the Tax Court must first pay the deficiency resulting from adjustments to his return to reflect the FPAA."); Staff of J. Comm. on Taxation, 97th Cong., Comparative Description of H.R. 6300 (The Tax Compliance Act of 1982) & H.R. 5829 (The Taxpayer Compliance Improvement Act of 1982) 38-41 (Comm. Print 1982) (hereinafter J. Comm. Print); 128 Cong. Rec. 21618-19 (daily ed. Aug. 17, 1982) (Technical Explanation of H.R. Rep. 97-760); 128 Cong. Rec. H2295 (daily ed. May 18, 1982) (statement of Rep. Conable); 128 Cong. Rec. 10410-11 (daily ed. May 18, 1982) (statement of Rep. Conable); 128 Cong. Rec. H1927 (daily ed. May 6, 1982) (statement of Rep. Rostenkowski).

[29]   *See also Sealey Power, Ltd. v. Comm'r of Internal Revenue*, 46 F.3d 382, 385-86 (5th Cir. 1995) (pointing out the analogy between the FPAA and a statutory notice of deficiency); *Clovis v. Comm'r of Internal Revenue*, 88 T.C. 970, 982 (1987) (same); Stephen R. Mather, *et al.*, Audit Procedures for Pass-Through Entities, 624-2nd T.M.P. I-B (2009) ("While the TEFRA partnership audit procedures present a significant departure from the previous procedures for auditing partnership adjustments, there is a substantial degree of similarity in the steps for both non-TEFRA and TEFRA audits."); Mortimer M. Caplin & Stuart L. Brown, "Partnership Tax Audits and Litigation after TEFRA," 61 Taxes 75, 78 (1983).

Supreme Court held that under 28 U.S.C. § 1346(a)(1), a district court does not have jurisdiction over an action by a taxpayer for a refund of a partial payment made by him on assessment for an alleged deficiency of his income tax. *Flora*, 362 U.S. at 152-53. Rather, the Court concluded that such a taxpayer must pay the full amount of the assessment before pressing a valid refund suit. In so ruling, the court relied on the "nature of the income tax," finding it to be "'imposed for each taxable year,'" on a basis that precluded suits based only on a partial payment. 362 U.S. at 149 (quoting 26 U.S.C. § 1). The Court thereby linked the annual accounting principle to its full payment rule. *See also United States v. Joe Graham Post No. 119, Am. Legion*, 340 F.2d 474, 476 (5th Cir. 1965) (discussing the relationship between *Burnet* and *Flora*). The *Flora* rule has been held to apply to refund suits in this court, as well. *See Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993).[30]

Consistent with its arguments in this case, respondent has, in the past, argued that the "full payment" rule requires a taxpayer, as a precursor to filing a refund suit, to pay not only the deficiency associated with a particular taxable year, but also related deficiencies for other years. And, it has lost. Thus, in *Shipley v. United States*, 608 F.2d 770 (9th Cir. 1979), the taxpayers received money in 1967, but regarded the money as a gift and did not report it as income. In 1971, they were compelled by a state court judgment to repay the money to the estate of the donor. *Id.* at 771-72. The IRS subsequently classified the 1967 gift as income and asserted a deficiency for that year. The Shipleys opposed the deficiency in the Tax Court, but, after filing claims for refund for 1970 and 1971, also filed a district court action asserting that if they were found to owe the 1967 tax, they were entitled to a credit in 1971, the year they restored the gift. *Id.* at 772. The United States argued that the latter suit should be dismissed under *Flora* because the 1967 deficiency had not been paid, but the Ninth Circuit rejected that claim, concluding that the Shipleys did not have to pay the 1967 deficiency in order to pursue a refund suit for either 1970 or 1971, as they had "paid the full amount of taxes assessed for those years." *Id.* at 773. The Ninth Circuit held that a contrary ruling would "impede" the filing of refund suits, while furthering none of the policies associated with the *Flora* rule. *Id.* Various cases have likewise held that, under *Flora*, a taxpayer need only pay the taxes due for the specific year in suit.[31]

---

[30]  This is true even though jurisdiction for such suits in this court is not provided by 28 U.S.C. § 1346, but by the Tucker Act, 28 U.S.C. § 1491(a)(1). *See Hinck v. United States*, 64 Fed. Cl. 71,74-76 (2005), *aff'd*, 446 F.3d 1307 (Fed. Cir. 2006), *aff'd*, 550 U.S. 501 (2007).

[31]  *See also Magnone v. United States*, 733 F. Supp. 613, 616 (S.D.N.Y. 1989), *aff'd*, 902 F.2d 192 (2d Cir.), *cert. denied*, 498 U.S. 853 (1990) ("Indeed, a taxpayer who owes back taxes for several years may pay interest on and sue with respect to only one of them."); *Whittington v. United States*, 240 F.R.D. 344, 350 (S.D. Tex. 2006) ("the key . . . is whether the taxpayer has paid the full tax liability assessed by the IRS for that specific year"); *see generally*, *Green v. United States*, 220 Ct. Cl. 712, 713 (1979) (implying this, albeit in *obiter dicta*); *cf. Snyder v. United States*, 539 F.2d 706 (4th Cir. 1976). As one treatise summarizes the law: "The full payment requirement is calculated in terms of the tax year in question in the refund suit. . . . The taxpayer may pay the taxes in full for one tax year and bring a refund suit thereon, even though the taxpayer has petitioned the Tax Court for redetermination of an assessment for a different tax year." 20A Fed. Proc. L. Ed. § 48:1357 (2010).

As in *Shipley*, requiring a partner to deposit an amount corresponding to its entire liability over a series of years serves no purpose other than to impede judicial review – at least insofar as it might be provided by this court or the district courts. Yet, there is nothing that remotely suggests Congress intended this – nothing in the language of section 6226, nor the structure of TEFRA, nor, for what it is worth, the statute's legislative history. Indeed, the contextual features found in the former two sources convincingly reveal a contrary legislative intent – one that requires only that the partner seeking a readjustment pay its liability for the tax year directly impacted by the partnership taxable year that is the subject of the FPAA. As such, this is not an instance where pluralization of the words "return" and "liability," as found in section 6226(e), is "'necessary to carry out the evident intent of the statute.'" *Hayes*, 129 S. Ct. at 1085 (quoting *First Nat'l Bank*, 263 U.S. at 657). To the contrary, doing so here would frustrate that intent – "forc[ing] a square peg into a round hole" in a way that *Rowland* emphasizes a court ought not do under the Dictionary Act where, as here, the context of the statutory language in question indicates otherwise. *Rowland*, 506 U.S. at 201.[32]

## D.

Can it be that this court has jurisdiction to consider a challenge to a FPAA that makes no adjustments to income in the partnership taxable year referenced? The answer, in a word, is –

---

In *Kislev*, this court recognized the tie between the deposit requirement of section 6226(e)(1) and the *Flora* rule. Thus, in denying the motion for reconsideration in that case, it stated – "the requirement that a partner make a deposit equal to the tax liability parallels Congress' general prerequisite to filing a refund suit that a taxpayer must fully pay the tax liability resulting from an IRS adjustment he seeks to challenge." *Kislev*, 84 Fed. Cl. at 383 (citing *Flora*). Where *Kislev* went astray, however, was in thinking that its construction of section 6226(e)(1) parallels the application of *Flora* – it does not and, indeed, *Kislev* cites no cases in support of its contrary view.

[32] At the risk of being flagged for piling on, it is worth noting that, as a policy matter, the result reached in *Kislev* and *Russian Recovery* makes no sense. Why would Congress, on the one hand, craft a complex statute that authorizes a partner to file a petition for readjustment in either the Tax Court, a district court or this court, and then, on the other hand, erect extraordinary financial hurdles that prevent most partners from proceeding in the last two fora? It would have been far simpler, of course, to require all such petitions to be filed in the Tax Court and thereby dispense not only with the deposit requirement, but also the variety of TEFRA provisions designed to prevent multiple cases from proceeding in different fora. *See, e.g.*, 26 U.S.C. § 6226(b)(2)-(4) (providing priority rules for multiple suits challenging a FPAA). Congress did not do this. Instead, it afforded those challenging partnership adjustments with a choice of fora no worse than what was available to partners before the passage of TEFRA – and, as the discussion above reveals, that choice never entailed requiring a partner to pay his alleged tax liability over two to twenty years as a toll charge for proceeding in a refund fora. *See* Caplin & Brown, *supra*, at 88-89 (comparing prior law to the rules under TEFRA).

yes.  The Tax Court, in fact, repeatedly has held that it has jurisdiction over a partnership adjustment even where the FPAA makes no immediate adjustment in income or deductions.  *See Wilmington Partners, L.P.*, 98 T.C.M. (CCH) at 16-17; *Harbor Cove Marina Partners P'ship v. Comm'r of Internal Revenue*, 123 T.C. 64, 78 (2004); *see also Univ. Heights at Hamilton Corp. v. Comm'r of Internal Revenue*, 97 T.C. 278, 282 (1991) (reaching a similar conclusion under the analogous large partnership judicial review provisions (26 U.S.C. §§ 6251-52)).  That court has approached this issue as a straightforward matter of statutory construction, looking only to see whether the requirements of section 6226 are fulfilled.  *See, e.g., Harbor Cove*, 123 T.C. at 78.  This court sees no reason why it ought not apply the same mode of analysis here – a FPAA was issued, a partner with legal standing has challenged that FPAA, and that partner has deposited more than the amount by which its liability would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the relevant partnership return.  *See* 26 U.S.C. §§ 6223; 6226(b), (e)(1).  All the prerequisites for bringing this TEFRA partnership case thus have been satisfied – that the revenue impact of the particular adjustment at issue is zero, as opposed to $1 million, $100 or just a $1, is largely happenstance and quite irrelevant.[33]  This court cannot expand the statute's jurisdictional requirements beyond their domain merely because respondent is confident that had Congress known thirty years ago what we now know it might have written them differently.  For its part, the court is not so sure Congress would have acted differently on this count – there are, after all, numerous indications to the contrary.  At all events, it is not for the court to speculate what Congress might have done, but to apply the law it passed – and under section 6226(e), this court has jurisdiction over the matter at hand.

### III.

Granted, TEFRA is the sort of law that brings to mind the old Mark Twain line – "The more you explain it, the more I don't understand it."[34]  Here, though, it seems relatively clear that Congress did not intend the deposit requirement for filing a TEFRA "refund" suit to sweep in liabilities for other years.  To the extent *Kislev* and *Russian Recovery* hold otherwise, they are, with all due respect, unpersuasive and will not be followed.  Based on the foregoing, the court instead concludes that Mr. Larson has made an adequate deposit and may (through the Trust) challenge the issues raised by the FPAA in question, insofar as section 6226(f) permits.

---

[33]  One must be careful not to carry the refund suit analogy too far.  In an action under section 6226, the plaintiff need neither file a refund claim nor demonstrate that any specific overpayment has occurred.  Rather, it must simply demonstrate that the adjustments made by the FPAA are wrong, at which point the Treasury is compelled to refund the deposit previously made.  Such a case is comparable to other categories of non-refund tax cases over which this court has jurisdiction, among them those authorized by section 7428 of the Code involving the classification of organizations under section 501(c)(3) of the Code.  *See Artuso v. United States*, 80 Fed. Cl. 336, 338 n.1 (2008) (cataloguing the various statutes that provide this court with tax jurisdiction).  That one cannot point to an example of a refund suit in which a "zero" recovery has been obtained thus is no reason to discount the existence of jurisdiction here.

[34]  Quoted in *SEC v. Chenery Corp.*, 332 U.S. 194, 213 (1947) (Jackson, J., dissenting).

Respondent's motion to dismiss is hereby **DENIED**.  On or before January 5, 2011, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge